**MINNEAPOLIS STAR AND TRIBUNE COMPANY, Petitioner,**

v.

**Honorable Daniel KAMMEYER, Respondent,**

**Craig Swanson, Respondent,**

**State of Minnesota, Respondent.**

**No. C9–83–819.**

Supreme Court of Minnesota.

Nov. 28, 1983.

Patricia A. Hirl, Minneapolis, for petitioner.

John F. MacGibbon, Sherburne County Atty., Elk River, for respondents.

Michael Vitt, Minneapolis, for amicus curiae Society of Professional Journalists, Sigma Delta Chi (MN. Chapt.).

C. Paul Jones, State Public Defender and Michael F. Cromett, Kathy King and Mark F. Anderson, Asst. State Public Defenders, Minneapolis, amici curiae.

Oppenheimer, Wolff, Foster, Shepard & Donnelly, Paul R. Hannah and Paula D. Osborn, St. Paul, for amici curiae Northwest Publications, Inc., WCCO–TV, Inc., WTCN Television.

YETKA, Justice.

Petitioner Minneapolis Star and Tribune Company is before the court seeking review of District Judge Daniel Kammeyer's order closing a pretrial hearing to the press and public. This court stayed disposition of the petition pending briefing of five specified issues.

On November 18, 1982, Craig Swanson drove his car off the road in Elk River, Minnesota, and killed two teenage girls. He was charged with criminal negligence, and his case became the subject of wide media coverage. On May 19, 1983, venue was changed based on the finding that "dissemination of potentially prejudicial material created a reasonable likelihood that a fair trial cannot be had in the County of Sherburne."

Judge Daniel Kammeyer was assigned to the case on May 25. He was the fourth trial judge to deal with the matter. The hearing which is the subject of this petition was called by Judge Kammeyer on June 2, 1983, "to cover some administrative matters" and to hear defendant's motions to suppress evidence and to change venue. The hearing was conducted in Judge Kammeyer's chambers and the public was excluded. Sometime after the hearing started, Judge Kammeyer stated that he was ordering it closed to the public under the authority of Minn.R.Crim.P. 25.01 and the case of *Gannett Co. v. DePasquale*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), because he found that a public hearing was likely to interfere with the defendant's right to a fair trial.

After ordering the hearing closed, Judge Kammeyer asked that one of petitioner's reporters, who was waiting in the courtroom, be advised of his order. The reporter came into the judge's chambers to inquire why the hearing was closed and to state on the record his attorney's objection to closure. Judge Kammeyer rebuffed further attempts by the reporter and counsel to discuss his closure order.

The closed hearing continued with a lengthy discussion off the record. (The

matters discussed were summarized on the record.) When the attorneys left the judge's chambers at the close of the hearing, the reporter asked for a copy of the order closing the hearing, but was not given one. Both attorneys refused to be interviewed by the reporter, saying that Judge Kammeyer had made an order restricting their comments to the media.

On June 6, 1983, the Minneapolis Star and Tribune Company filed its petition with this court for review of the closure order and for a writ of mandamus commanding Judge Kammeyer to release all closed documents and rescind his order silencing counsel.

On June 8, 1983, the district court entered two orders. One, designated "Pre-Trial Order" (hereafter "closed order"), set out in detail the matters discussed at the closed hearing, including the fact that defendant had been convicted three or four times for driving while intoxicated and that the parties had engaged in plea negotiations.

The second order was designated "Order and Memorandum [Public Document]" (hereafter "public order"). That order stated that the hearing of June 2, 1983, was closed to the public, that the "closed" order was to be issued only to the attorneys for the parties and to the Minnesota Supreme Court, and that a hearing was set for June 9, 1983, to determine whether public access to the closed order was controlled by Rule 25.01 (dealing with closure of pretrial hearings) or Rule 25.03 (dealing with closure of public records) of the Minnesota Rules of Criminal Procedure. The public order also directed counsel not to make any extrajudicial statements relating to the case for dissemination by any means of public communication during its pendency.

At the June 9, 1983, hearing, counsel for the Minneapolis Star and Tribune appeared and argued that the "clear and present danger of prejudice" standard of Rule 25.-03 should govern public access to the closed order, not the "substantial likelihood of prejudice" standard of Rule 25.01. She stated that a clear and present danger had

not been demonstrated in this case and suggested that the court consider alternatives to closure such as voir dire, change of venue, and voluntary cooperation by the media. The court also heard arguments from counsel for the state and defendant requesting that portions of the closed order remain closed while others be made public.

At the close of the hearing, the trial court accepted defendant's suggestion that only four paragraphs of the closed order be restricted and made the balance of that order a public document. It ruled that the closed parts of the order were governed by Rule 25.01 and did not have to be made public until the case was disposed of. In the alternative, if the more rigorous standard of Rule 25.03 was applicable, that standard was met with regard to the four paragraphs of the order that remained closed. The court stated, without giving its reasons, that the alternatives to closure suggested by petitioner's counsel would not be adequate to prevent prejudice to the defendant. Finally, the court rescinded that part of its public order restricting counsel's right to give statements about the case to the media.

On June 20, 1983, this court ordered that disposition of the petition for review be stayed pending submission of briefs addressing five specific issues. By subsequent orders, *amici curiae* —the state public defender, Sigma Delta Chi, and Northwest Publications, et al.—were also permitted to file briefs.

Following completion of defendant Swanson's trial, transcripts of the June 2 pretrial hearing and closed portions of the June 8 order were released to the public. Petitioner immediately published the fact of Swanson's prior DWI convictions on the front page of its newspaper.

The issues this court instructed the parties to address are:

1. Whether the trial court erred in refusing to provide the public or its media representatives with an opportunity to be heard prior to closing the pretrial hearing;

2. Whether the order issued to counsel constituted a restrictive order and, if so, whether such an order was appropriate;

3. Whether the "substantial likelihood" standard of Minn.R.Crim.P. 25.01 or the standards contained in Minn.R. Crim.P. 25.03, subd. 3 govern the issuance of the restrictive order preventing access to records and orders developed in a closed pretrial hearing;

4. Whether the trial court abused its discretion in excluding the public from the pretrial hearing and in restricting access to portions of the record issued after the closed pretrial hearing; and

5. Whether the provisions of Rules 25.- 01 and 25.03 achieve a proper balance between the public and media's First Amendment right to access and the defendant's Fifth Amendment due process right and Sixth Amendment right to a fair and impartial trial by jury.

Pertinent to this case are the First and Sixth amendments to the United States Constitution, article 1, sections 3 and 6 of the Minnesota Constitution and Minn.R. Crim.P. 25.01 and 25.03. Each of these is set forth verbatim in the appendix to this opinion.

What we have here is another classic example of a direct conflict between the freedom of the press and the right of every defendant to a fair and impartial trial. A strong argument is made that not only the trial itself, but also oral preliminary hearings and motions should be open to the press and to the public. However, it is extremely doubtful that the decisions of the United States Supreme Court would permit such broad access. Likewise, there is little chance that the procedure adopted in Great Britain, which vests enormous power in the trial bench to prevent publication of any part of a criminal proceeding under threat of contempt, would be sanctioned. *See Gillmor, Free Press and Fair Trial*, ch. 12 (1966). Thus, in the United States, our courts have been struggling with a middle course which will guarantee a fair trial and protect what may be the most liberal access by the press and the public that exists in the entire world.

The specific issue of the public's constitutional right of access to pretrial proceedings in criminal cases has not been settled by the U.S. Supreme Court. However, three recent cases provide a framework for our analysis of the question. In *Gannett Co. v. DePasquale*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), the Court considered whether a state court's closure of a pretrial hearing on the suppression of evidence in a murder case was error. A majority ruled that the public does not have a right of access to criminal trials or pretrial criminal proceedings under the Sixth Amendment and that a public trial is an individual defendant's personal right. *Id.* at 378–84, 99 S.Ct. at 2904–08. However, the court also stated that the right to a public trial does not imply the right to demand a private trial. *Id.* at 382, 99 S.Ct. at 2907. The Court decided that it did not need to consider whether the right was granted by the First Amendment because the procedures used by the state court in ordering closure of the hearing were adequate to protect any First Amendment rights that did exist. *Id.* at 392, 403, 99 S.Ct. at 2911, 2917 (majority & Powell, J., concurring).

*Gannett* was followed by *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). In a plurality opinion, the Court ruled that the First Amendment gives the press and the public a right of access to criminal trials. *Id.* at 580, 100 S.Ct. at 2829. Chief Justice Burger, joined by Justices White and Stevens, stated that some right to gather information is essential to the meaningful exercise of the First Amendment rights of speech, press, and assembly. *Id.* at 575–78, 100 S.Ct. at 2826–28. The right to gather information *at criminal trials* is implicit in the First Amendment because the amendment was primarily intended to protect free communication about the functioning of government and criminal trials are among the most important of govern-

ment functions. *Id.* at 575, 100 S.Ct. at 2826. Furthermore, criminal trials were "presumptively open" at the time the amendment was enacted, based on practices extending back to pre-Norman times and on the significant social values served by public trials. *Id.* at 575, 564–74, 100 S.Ct. at 2826, 2820–26. Justice Burger concluded that closure of the trial was improper because the trial judge failed to make findings supporting closure, failed to consider alternatives to closure that would ensure fairness, and failed to consider the public's constitutional right of access. *Id.* at 580–81, 100 S.Ct. at 2829.

Justice Brennan, joined by Justice Marshall, concurred in the judgment. Justice Brennan began by recognizing a right of access to information with its source in the First Amendment, but he distinguished the "right of access" from "freedom of expression," also assured by the First Amendment. *Id.* at 585, 100 S.Ct. at 2831. Freedom of expression is "inviolate"—it can only be suppressed in the rarest of circumstances. *Id.* at 585, 100 S.Ct. at 2831. The right of access, however, does *not* have the same "categorical" protection. Courts must use "discrimination and temperance" when deciding whether the right exists in any given situation and must consider the nature of the information sought and the opposing interests. *Id.* at 585–86, 100 S.Ct. at 2831–32. Justice Brennan identified two factors to be weighed in resolving claims of a constitutional right of access to a particular governmental proceeding: historical practice and whether public access furthers the ends of the particular government process. *Id.* at 589, 100 S.Ct. at 2834.

Applying this analysis to criminal trials, Justice Brennan found a longstanding tradition of public access, supported by current state practices and decisions of the U.S. Supreme Court. *Id.* at 589–93, 100 S.Ct. at 2834–35. He also found that public access advances several of the particular purposes of a criminal trial: it promotes public confidence in the fairness and impartiality of the judiciary, serves as an important check on the power of the judicial branch of government, and aids accurate factfinding by discouraging perjury and notifying potential witnesses unknown to the parties. *Id.* at 593–97, 100 S.Ct. at 2836–38. Justice Brennan concluded that there was a constitutionally guaranteed right of access to criminal trials. *Id.* at 598, 100 S.Ct. at 2839.

There were five other opinions filed in *Richmond Newspapers*, but none of them added to the analysis of the two opinions summarized above. Justice Rehnquist was the only dissenter, and Justice Powell took no part in the case. Thus, seven of the eight participating justices found a First Amendment right to attend criminal trials.

The third case is *Globe Newspaper Co. v. Superior Court for the County of Norfolk*, 457 U.S. 596, 102 S.Ct. 2613 (1982). Like *Richmond*, *Globe* dealt with the closure of a criminal trial, not a pretrial proceeding. However, *Globe* is important to this discussion because it clarifies the approach the Court is likely to take in considering other constitutional right-of-access claims. Six of the nine justices (the majority opinion and Justice O'Connor's concurrence) employed Justice Brennan's two-factor analysis from *Richmond*. 102 S.Ct. at 2619–20, 2623. Accordingly, our analysis of the public's right of access to pretrial proceedings is based on the two considerations identified by Justice Brennan.

■ The first factor is the historical practice with regard to public access. The parties have not briefed this issue. However, Justice Burger addressed this subject quite thoroughly in his concurring opinion in *Gannett Co. v. DePasquale*. He concluded that, at common law, there was no tradition of public access to pretrial proceedings. 443 U.S. at 395–97, 99 S.Ct. at 2913–14. The lack of a tradition of public access to pretrial proceedings should not necessarily be counted against petitioner. Many modern pretrial procedures, such as the motion to suppress in this case, have no historical counterpart. These proceedings are often critical, sometimes decisive, to the outcome in a criminal prosecution. *Gannett v. DePasquale*, 443 U.S. 368, 434,

99 S.Ct. 2898, 2933, 61 L.Ed.2d 608 (Blackmun, J., dissenting). Furthermore, the Court adopted a very broad historical interpretation of "criminal trials" in the *Globe* case. The crime at issue in *Globe* was a sexual assault on a minor. The Court held that even though there was no history of access to trials involving sexual assaults on minors, the *general* tradition of open criminal trials was sufficient to support a constitutional right of access. 102 S.Ct. at 2619, n. 13. Therefore, it seems proper to de-emphasize historical practices when considering the public's right of access to pretrial hearings. *See United States v. Criden*, 675 F.2d 550, 555 (3d Cir.1982) (historical considerations irrelevant because suppression hearing a modern procedure).

The second factor is the extent to which public access furthers the purposes of the particular government process. Publicizing pretrial procedures improves those procedures in the same manner that publicity improves trials—it promotes fairness, accuracy, and public confidence. However, in the case of pretrial proceedings, publicity has a far greater potential for prejudicing defendants than it does at the time of trial. This is because safeguards which can be applied at the trial stage, such as sequestration of witnesses and jurors, have no counterpart at the pretrial stage of a criminal proceeding. *See Richmond Newspapers*, 448 U.S. at 581, 100 S.Ct. at 2829.

■ We conclude that the public does have a First Amendment right of access to pretrial proceedings in criminal cases. Pretrial proceedings play a major role in the modern criminal trial, and public access tends to strengthen this important component of the criminal justice system. However, this right cannot be absolute because of the danger of prejudice to defendants. Thus, the public's right of access to pretrial proceedings may properly be subjected to some procedural safeguards that are de-

signed to preserve the fairness of the trial itself.

Before discussing the five issues we asked the parties to address, we will discuss the procedural prerequisites to closure of pretrial hearings. We first direct our attention to the procedures contained in Minn.R.Crim.P. 25.01. There are three: The trial court must find a "substantial likelihood" that prejudicial evidence will be revealed at the pretrial hearing which would interfere with defendant's right to a fair trial; the court must state its reasons for closure; and a complete record of the pretrial proceedings must be made so the public can review a transcript of the closed hearing after completion of the trial or disposition of the case without trial.

The most significant safeguard in the rule is the requirement that a complete record be made. When a transcript is available to the public after the trial, all of the values of public access are preserved.[1] As long as a record is available, all that is at stake is the *incremental* value of *immediate* access to the information revealed at the hearing. Further protection of the public's right of access will be considered only in terms of this increment. This principle must be kept in mind when other procedures to balance the competing interests of the public and defendant are considered.

Petitioner and *amicus* Sigma Delta Chi argue that the "substantial likelihood" of prejudice standard does not adequately balance these competing interests. They suggest that closure should only be allowed when there is a "clear and present danger" of prejudice. Petitioner cites two state court opinions to support its argument, but does not describe their reasoning and admits that most other courts which have considered the question have adopted a lower standard. Sigma Delta Chi cites the fact that the American Bar Association standard on which Rule 25.01 is based has been changed to embrace the "clear and

---

1. The value of public access may be reduced somewhat by the time lag. *See Gannett v. De-*

*Pasquale,* 443 U.S. at 442 n. 17, 99 S.Ct. at 2937 n. 17, 61 L.Ed.2d 608 (Blackmun, J., dissenting).

present danger" standard. This change was noted by the Supreme Court in the *Gannett* case, but the Court stated that the authority relied on by the ABA was "irrelevant" to the question of standards for the closure of pretrial hearings. 443 U.S. at 391, n. 23, 99 S.Ct. at 2911, n. 23.

The state, *amici* Northwest Publications, et al. ("Northwest"), and the state public defender argue that the "substantial likelihood" standard adequately protects the public's interest. They essentially rely on the Supreme Court's opinion in *Gannett.* Even though the Court did not find a First Amendment right of access to pretrial hearings in that case, five justices discussed the procedures necessary to protect such a right if it did exist. Four justices would require a "reasonable probability of prejudice" standard, and the fifth thought a "likelihood of prejudice" standard was adequate. 443 U.S. at 393, 401, 99 S.Ct. at 2912, 2916. (Majority & Powell, J., concurring). The "substantial likelihood" standard of Rule 25.01 is higher than either of these.

■ *Gannett* is authoritative on this issue.[2] Even though the issue of a First Amendment right was not resolved, the Court's opinion rested in part on its holding that the standard employed by the trial court when it ordered closure was adequate. Under this authority, and considering only the incremental public interest at stake, the "substantial likelihood" standard in Rule 25.01 is constitutionally sufficient. Since that is the standard provided by Rule 25.01, it is the one adopted by this court and we so hold.

■ Rule 25.01 requires that the trial judge set forth his reasons for ordering closure of a pretrial hearing. Implicit in this procedure is the requirement that the closure order be supported by findings of fact. The rule would be absurd if the judge's reasons could be based on personal opinions or whim—review by this court can only be meaningful if the reasons are supported by facts. Furthermore, as long as the court provides such findings of fact, we hold that its reasons must also include a review of any suggested alternatives to closure and a statement of why those alternatives are inadequate. Such a review would not impose a significantly greater burden on the trial court, but would provide meaningful protection for the public's right of access by assuring that alternatives were considered.

■ The procedural prerequisites to closure in Rule 25.01 provide important safeguards, but we do not think they are adequate to protect the important First Amendment rights at stake when pretrial motion decisions are closed to the public. We believe that the public must be afforded *some* opportunity to be heard before closure is ordered. However, the scope of such a hearing can properly be quite limited in light of the incremental public interest at stake when a transcript of the closed hearing will ultimately be available. We rely on the case of *Gannett v. DePasquale* to support our position. In *Gannett,* four of the majority justices concluded that the trial court's procedures, which included a hearing on the closure order, were adequate to protect any First Amendment

---

**2.** We cannot decide this case under the authority of *Northwest Publications, Inc. v. Anderson,* 259 N.W.2d 254 (Minn.1977). There, we held that an order denying public access to a criminal complaint was an improper "prior restraint" and we discussed the procedural prerequisites to imposing such restraints. However, the Supreme Court has very clearly distinguished prior restraints from orders limiting access to pretrial proceedings. In doing so, it expressly stated that *Nebraska Press Association v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976), one of the authorities relied on in *Northwest,* was not applicable to pretrial hearings:

This Court's decision in *Nebraska Press Assn. v. Stuart* * * * is of no assistance to the petitioners in this case. The *Nebraska Press* case involved a direct prior restraint imposed by a trial judge on the members of the press, prohibiting them from disseminating information about a criminal trial. * * * The exclusion order in the present case, by contrast, did not prevent the petitioner from publishing any information in its possession. The proper inquiry, therefore, is whether the petitioner was denied any constitutional right of access.

*Gannett Co. v. DePasquale,* 443 U.S. at 393, n. 25, 99 S.Ct. at 2912, n. 25 (citations omitted). *See also Richmond Newspapers,* 444 U.S. at 585–87, 100 S.Ct. at 808–09, 63 L.Ed.2d 22 (Brennan, J., concurring).

right that did exist. 443 U.S. at 392, 99 S.Ct. at 2916. Justice Powell, who was with the majority, wrote that a hearing is necessary to protect the public's right of access. *Id.* at 401, 99 S.Ct. at 2911 (Powell, J., concurring). The four dissenters found a right to a hearing based on the Sixth Amendment. *Id.* at 445–46, 99 S.Ct. at 2939 (Blackmun, J., dissenting).

■ The extent of the hearing required by *Gannett* is not clear, but we think it is clear that the hearing must be held prior to closure.[3] Justice Powell (one of the majority justices) would require that persons present who object to closure be given an opportunity, before closure, to state their objections and show that alternatives to closure would adequately protect the defendant. *Id.* at 401, 99 S.Ct. at 2916. The four dissenters would also require a preclosure hearing, but limited to an opportunity to state objections without extended legal argument or the presentation of evidence. *Id.* at 445–46, 99 S.Ct. at 2939 (Blackmun, J., dissenting). We hold that the First Amendment requires a public hearing, limited to statements of objection and suggested alternatives, prior to closure.

If a pre-closure hearing is required, some kind of notice must be provided so the public will have an opportunity to frame its objections properly. If the public is required to respond on the spot, the hearing would be unlikely to provide any assistance to the court. Other courts have dealt with this issue, some requiring actual notice to the media prior to hearing a motion for closure, others holding that it is sufficient notice if the motion to close is docketed in advance of the hearing. A thoughtful discussion of the issues is included in *U.S. v. Criden,* 675 F.2d 550, 557–59 (3d Cir.1982). We think that actual notice to a representative of the press would be unworkable and conclude that notice by docket entry at least 24 hours before hearing a motion to

close is sufficient to protect the public's right of access.

Having determined the constitutional prerequisites to closure of pretrial hearings, we now address the five issues identified in our order of June 20, 1983.

■ 1. We cannot say that the trial court erred in refusing to provide the public with an opportunity to be heard before closing the pretrial hearing. Under existing law at the time of his decision, Judge Kammeyer acted reasonably and properly in all respects to protect the rights of all parties concerned, with the possible exception of his failure to make a complete record of the proceedings in chambers. The decisions of the United States Supreme Court on the subject are those of a sharply divided court, and it is difficult to determine what the majority either has held or will hold in the future. Our own case law is meager at best. However, we emphasize that our decision today will require the trial courts to hold public hearings prior to closure in the future.

2. We do not decide whether the order restricting counsel's comments to the press was a restrictive order and we have not considered the appropriateness of the order. The issue is moot because the court modified that order to satisfy all the parties concerned prior to trial. We have not considered whether or not petitioner has standing to challenge such an order.

■ 3. Rule 25.01 governs the issuance of restrictive orders barring access to records and orders developed in closed pretrial hearings. We have found that Rule 25.01 properly balances the public's right of access and the defendant's right to a fair trial as long as the public is given a hearing prior to closure. If the more restrictive standard of Rule 25.03 were applied to orders and transcripts that resulted from properly closed pretrial proceedings, the public could gain access to information that was likely to prejudice a defendant. This

---

**3.** Four of the majority justices in *Gannett* thought that a post-closure hearing (such as the June 9 hearing in this case) was sufficient. *Id.* at 392, 99 S.Ct. at 2916. However, *Gannett* is distinguishable from this case because, in *Gan-*

*nett,* there was no objection to closure until after the closed hearing was over. Here, the public did object, but was denied an opportunity to be heard.

would upset the balance achieved by Rule 25.01 and cannot be permitted.

4. Under existing law at the time of its decision, the trial court did not abuse its discretion when it excluded the public from the pretrial hearing or when it restricted access to portions of the record issued after the closed pretrial hearing. We emphasize that a trial court must have control of its courtroom. It cannot rely on voluntary compliance with its requests or a trial would be a mockery of justice. In the words of Justice Powell, concurring in the *Gannett* case: "The right of access to courtroom proceedings, of course, is not absolute. * * * The task of determining the application of these limitations in each individual trial necessarily falls almost exclusively upon the trial court asked to exclude members of the press and public from the courtroom." 443 U.S. at 398, 99 S.Ct. at 2839. Again, however, we note that our opinion today will impose additional requirements on the trial courts in the future.

5. We hold that Rules 25.01 and 25.03 do achieve the proper balance between the First and Sixth Amendments under interpretations that we have made of the United States Supreme Court decisions discussed in this opinion. The Supreme Court has clearly distinguished closure of pretrial hearings from prior restraints, and it is proper that different standards and procedures should apply under the different circumstances covered by Rules 25.01 and 25.03.

This case represents a conflict between the First and Sixth Amendments that is likely to arise again in Minnesota. Accordingly, we deem it appropriate to set out the following guidelines for the assistance of the trial courts:

1. All criminal trials held in Minnesota shall be deemed open to the public and to the press, including pretrial conferences or hearings, except as limited by this opinion.

2. If, prior to trial, counsel for either the prosecution or the defense has evidence that he believes may be the subject of an exclusionary order, he has a duty first to advise opposing counsel of that fact and suggest that both counsel meet privately with the presiding judge in chambers and disclose to the court the problem. If counsel for either side refuses to meet with the court, the court may order counsel to be present in chambers.

3. In chambers, the court shall review the evidence outlined to him by counsel that might be the subject of a restrictive order. If the court feels that any of the proffered evidence might properly be the subject for a restrictive order, the court shall immediately docket a notice of hearing on a motion for a restrictive order made by either counsel or move for such an order on its own motion. Such notice shall be reasonably calculated to afford the public and the press with an opportunity to be heard on whether the defendant is likely to be deprived of a fair trial if the press and public are permitted to attend the pretrial hearing.

4. At the hearing held pursuant to such notice, the trial court shall advise all present that evidence has been disclosed to it that may be the subject of a closure order and shall give the public and the news media an opportunity to suggest any alternatives to a restrictive order.

5. The court shall not order a pretrial hearing closed to the public unless it finds that there would be a substantial likelihood of prejudice to defendant if the public were allowed to attend. Such a closure order must be supported by findings of fact and must include a review of alternatives to closure and a statement of why the court believes such alternatives are inadequate. Any matter to be decided which does not present the risk of revealing inadmissible, preju-

dicial information shall be decided openly and on the record.

6. All matters discussed in a closed hearing shall be the subject of a complete record as provided in Rule 25.-01.

7. Nothing in this opinion is intended to restrict bench or in-chambers conferences held during the trial of a criminal case provided that a complete record is made of bench conferences and said record provided to the press and to the public after completion of a trial in the same manner as a record is made available under Rule 25.-01.

## APPENDIX

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, or to petition the government for a redress of grievances.

U.S. Const. amend. I.

In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to have the assistance of counsel for his defense.

U.S. Const. amend. VI.

**Liberty of the press.** The liberty of the press shall forever remain inviolate, and all persons may freely speak, write and publish their sentiments on all subjects, being responsible for the abuse of such right.

Minn. Const. art. I, § 3.

**Rights of accused in criminal prosecutions.** In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the county or district wherein the crime shall have been committed, which county or district shall have been previously ascertained by law. The accused shall enjoy the right to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor and to have the assistance of counsel in his defense.

Minn. Const. art. I, § 6.

### Rule 25.01. Pretrial Hearings—Motion to Exclude Public

All pretrial hearings shall be open to the public. However, the defendant may move that all or part of such hearing be held in chambers or otherwise closed to the public on the ground that dissemination of evidence or argument adduced at the hearing may disclose matters that may be inadmissible in evidence at the trial and likely to interfere with his right to a fair trial by an impartial jury. The motion shall not be granted unless the court determines that there is a substantial likelihood of such interference. With the consent of the defendant, the court may make such an exclusion order on its own motion or at the suggestion of the prosecution. No exclusion order shall issue without the court setting forth the reasons therefor. Any person aggrieved may petition the supreme court for immediate review of the order granting or denying exclusion. Whenever under this rule all or part of any pretrial hearing is held in chambers or otherwise closed to the public, a complete record of the proceedings shall be made and upon request shall be transcribed and filed and shall be available to the public following the completion of the trial or disposition of the case without trial. For the protection of innocent persons, the court may order that names be deleted or substitutions made therefor in the record.

Minn.R.Crim.P. 25.01 (1983).

### Rule 25.03. Restrictive Orders

Except as provided in Rule 33.04 the following rule shall govern the issuance of any court order restricting public ac-

cess to public records relating to a criminal proceeding:

Subd. 1. Motion and Notice.

(a) A restrictive order may be issued only upon motion and after notice and hearing.

(b) Notice of the hearing shall be given in the time and manner and to such interested persons, including the news media, as the court may direct.

Subd. 2. Hearing.

(a) At the hearing, the moving party shall have the burden of establishing a factual basis for the issuance of the order under the conditions specified in subd. 3.

(b) The public and news media shall have a right to be represented at the hearing and to present evidence and arguments in support of or in opposition to the motion.

(c) A verbatim record shall be made of the hearing.

Subd. 3. Grounds for Restrictive Order.

The court may issue a restrictive order under this rule only if the court concludes on the basis of the evidence presented at the hearing that:

(a) Access to such public records will present a clear and present danger of substantially interfering with the fair and impartial administration of justice.

(b) All alternatives to the restrictive order are inadequate.

Subd. 4. Findings of Fact.

The court shall make written findings of the facts and statement of the reasons supporting the conclusions upon which an order granting or denying the motion is based.

Subd. 5. Appellate Review.

(a) Anyone represented at the hearing or aggrieved by an order granting or denying a restrictive order may petition the Supreme Court for review, which shall be the exclusive method for obtaining review.

(b) The Supreme Court shall determine upon the hearing record whether the moving party sustained the burden of justifying the restrictive order under the conditions specified in subd. 3 of this rule, and the Supreme Court may reverse, affirm, or modify the order issued.

Minn.R.Crim.P. 25.03 (1983).