# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2022 ND 128

State of North Dakota,                                    Plaintiff and Appellee

v.

Robert John Pulkrabek,                                  Defendant and Appellant

## No. 20210332

Appeal from the District Court of Ransom County, Southeast Judicial District, the Honorable Jay A. Schmitz, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Jensen, Chief Justice.

Fallon M. Kelly, State's Attorney, Lisbon, ND, for plaintiff and appellee.

Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellant.

**Jensen, Chief Justice.**

[¶1] Robert Pulkrabek appeals from a criminal judgment entered in November 2021. In April 2017, Pulkrabek was found guilty by a jury of terrorizing and disorderly conduct. He was sentenced in November 2021. Pulkrabek argues a variety of events before and during the trial were structural errors in violation of the constitutional requirement for a public trial. We reverse and remand.

I

[¶2] In 2015, Pulkrabek was charged with terrorizing, threatening public servants, menacing, and disorderly conduct. On the day of the trial a pre-trial conference was held in chambers. Initially Pulkrabek was not present, during which time the following topics were discussed: the jury selection process, the manner in which the parties were to assert objections during trial, a video recording and possible evidentiary stipulations, and jury instructions. Pulkrabek arrived approximately ten minutes after the pre-trial conference began, the district court explained to him what had been discussed, and the pre-trial conference continued with the discussion of jury instructions. The pre-trial conference adjourned, but approximately ten minutes later the parties returned to chambers to discuss a request by Pulkrabek for his attorney to withdraw as his counsel.

[¶3] After the pre-trial conferences the jury pool was assembled in the district courtroom. Before the jury selection process began, Pulkrabek's attorney requested to meet with the court. The parties went to the jury room out of the presence of the juror pool during which time Pulkrabek requested a bench trial and a continuance. During the discussion in the jury room Pulkrabek asserted he was not psychologically fit to stand trial and noted his psychological problems were "not a secret." The court noted the absence of a motion relating to Pulkrabek's psychological fitness, indicated the trial would proceed as scheduled, and the parties returned to the courtroom. Voir dire was then

conducted on the record but a record of the parties' peremptory challenges was not kept by the court.

[¶4] During the trial, there were several instances when the district court requested the counsel approach the bench. No record was made of these discussions at the bench.

[¶5] After the State completed its case, the district court granted Pulkrabek's motion for acquittal on the charges of threatening public servants and menacing. The jury found Pulkrabek guilty of terrorizing and disorderly conduct. After significant delay, Pulkrabek was sentenced in 2021 to 18 months of incarceration for terrorizing, and a concurrent 30 days for disorderly conduct.

[¶6] Pulkrabek initiated this appeal asserting his right to a public trial had been violated by conducting the pre-trial conference in chambers, failing to make a record of the peremptory challenges, holding the conference discussing his request for a bench trial, request for a continuance, and his psychological competence in the jury room, and failing to preserve a record of the bench conferences held during the trial.

## II

[¶7] "Historically, we have exhibited a strong preference for public trials and our state and federal constitutions presume open trials as the norm." *State v. Klem*, 438 N.W.2d 798, 800 (N.D. 1989) *(*citing *Waller v. Georgia*, 467 U.S. 39 (1984)). When a public trial violation is claimed, this Court reviews as follows:

> When considering on appeal a defendant's claim that his right to a public trial was violated, we first consider whether the claim of error was preserved at trial. *State v. Olander*, 1998 ND 50, ¶¶ 8, 14, 575 N.W.2d 658 (explaining that whether an issue is preserved by timely objection, forfeited, or waived determines the standard of review for the issue). We then consider the threshold question of whether there was a closure implicating the public trial right. *State v. Morales*, 2019 ND 206, ¶ 16, 932 N.W.2d 106. If there was a closure, we determine whether the trial court made pre-closure *Waller* findings sufficient to justify the closure. *Id.* at ¶ 25. We

review the court's findings under the clearly erroneous standard and its application of the law to those findings de novo. *See Klem*, 438 N.W.2d at 802-03; *State v. Hall*, 2017 ND 124, ¶ 12, 894 N.W.2d 836 (reviewing district court's speedy trial conclusion de novo and associated findings for clear error).

In criminal cases, errors not raised in the district court may be either forfeited errors or waived errors. *State v. Watkins*, 2017 ND 165, ¶ 12, 898 N.W.2d 442 (citing *Olander*, 1998 ND 50, ¶ 14, 575 N.W.2d 658). "Forfeiture is the failure to timely assert a right, while waiver is the intentional relinquishment of a right." *Id*. We review forfeited errors under N.D.R.Crim.P. 52(b) for obvious error. *Id*. The structural error doctrine applies to a narrow class of rights, including three Sixth Amendment rights defining the framework of a trial: the right to counsel, the right to self-represent, and the right to a public trial. *State v. Rogers*, 2018 ND 244, ¶ 5, 919 N.W.2d 193. Because a structural error affects the framework within which a trial proceeds, it renders the trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence. *Morales*, 2019 ND 206, ¶ 14, 932 N.W.2d 106. The structural error doctrine serves the purpose of "ensur[ing] insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial." *Id*. (quoting *Weaver v. Massachusetts*, ⸺ U.S. ⸺, 137 S. Ct. 1899, 1907, 198 L.Ed.2d 420 (2017)). Errors that affect the entire adjudicatory framework "defy analysis by 'harmless-error' standards." *Rogers*, at ¶ 4 (quoting *Puckett v. United States*, 556 U.S. 129, 141, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009)). An impact on the trial's outcome is not necessary in the case of structural errors. *Morales*, at ¶ 14. A difficulty in "assess[ing] the effect of the error" is inherent in the very nature of a structural error. *Rogers*, at ¶ 4 (quoting *United States v. Marcus*, 560 U.S. 258, 263, 130 S.Ct. 2159, 176 L.Ed.2d 1012 (2010)).

"Violation of the right to a public trial is a structural error." *Morales*, 2019 ND 206, ¶ 15, 932 N.W.2d 106 (citing *Rogers*, 2018 ND 244, ¶ 5, 919 N.W.2d 193). This Court has repeatedly said structural errors require automatic reversal regardless of whether they were forfeited or waived, including when the error is invited. *Morales*, at ¶ 15; *Rogers*, at ¶ 3; *State v. Rende*, 2018 ND 56, ¶ 8, 907 N.W.2d 361; *State v. Decker*, 2018 ND 43, ¶ 8, 907 N.W.2d 378;

3

> *Watkins*, 2017 ND 165, ¶ 12, 898 N.W.2d 442; *see State v. White Bird*, 2015 ND 41, ¶ 24, 858 N.W.2d 642.

*State v. Martinez*, 2021 ND 42, ¶¶ 3-5, 956 N.W.2d 772 (cleaned up). "There is thus an absolute requirement that before the trial court may exclude the public, it must articulate its reasons on the record and those reasons must be expressed in findings that enable a reviewing court to exercise its function." *Klem*, 438 N.W.2d at 801.

[¶8]   Pulkrabek did not assert a "public trial" objection to any of the violations he asserts on appeal. Following our analysis in *Morales*, 2019 ND 206, ¶ 14, and as explained in *Martinez*, 2021 ND 42, ¶¶ 4, 12, we conclude any potential error should be treated as a forfeited error, subject to a review as an obvious error under N.D.R.Crim.P. 52(b). As a prerequisite to applying our obvious error review, we must first confirm whether the alleged errors implicated Pulkrabek's Sixth Amendment right to a public trial.

## III

[¶9]   Pulkrabek argues the pre-trial conferences held in non-public places, and evidentiary rulings made during those conferences, violated his Sixth Amendment right to a public trial. The State counters that the pretrial conferences were administrative and did not implicate Pulkrabek's Sixth Amendment right to a public trial.

[¶10] "[T]he Sixth Amendment public trial right attaches from the beginning of adversarial proceedings through sentencing." *State v. Morales*, 2019 ND 206, ¶ 16, 932 N.W.2d 106 (citing *State v. Rogers*, 2018 ND 244, ¶¶ 11-12, 919 N.W.2d 193). "Closures of pretrial hearings implicate the public trial right, although they do not always require reversal of a subsequent conviction." *Morales*, at ¶ 16 (citing *Rogers*, at ¶¶ 19-21). "[A] court proceeding concerning a motion in limine or motion to suppress evidence that is held either before trial or otherwise outside the presence of the jury is a proceeding that must be in open court unless pre-closure findings under *Waller* justify a closure." *Morales*, at ¶ 19.

[¶11] At the pretrial conferences in this case, the parties and district court discussed the following in chambers: jury selection, a video recording, jury instructions, and Pulkrabek's request for his attorney to withdraw and the court's denial of that motion.

[¶12] The State contends the pretrial conferences were limited to administrative matters that did not implicate Pulkrabek's right to a public trial, citing to *Minneapolis Star and Tribune Co. v. Kammeyer,* 341 N.W.2d 550, 556 (Minn. 1983) for the proposition that, "[t]he most significant safeguard in the rule is the requirement that a complete record be made. When a transcript is available to the public after the trial, all of the values of public access are preserved." In *Kammeyer*, the Minnesota Supreme Court holding relied upon its analysis of a specific Minnesota Rule of Criminal Procedure that does not have an equivalent in North Dakota. *Id*. While the parties frame the issue as one based on administrative versus non-administrative matters, we note the case law discussing "routine evidentiary or administrative issues" focuses on brief sidebars or bench conferences. *See Morales*, 2019 ND 206, ¶ 17. Here, the pre-trial conferences were not brief sidebars or bench conferences. While we must still consider whether the non-public pretrial conferences require reversal, we conclude the non-public pretrial conferences do implicate Pulkrabek's right to a public trial. *Morales*, at ¶ 16 ("Closures of pretrial hearings implicate the public trial right[.]").

IV

[¶13] Pulkrabek did not assert a "public trial" objection to any of the violations he asserts on appeal. As noted above, our analysis is guided by our decision in *Morales*, and any potential error must be treated as a forfeited error, subject to a review as an obvious error under N.D.R.Crim.P. 52(b). "A de novo standard of review applies to whether facts rise to the level of constitutional violation." *Martinez*, 2021 ND 42, ¶ 19 (citing *Rogers*, 2018 ND 244, ¶ 3).

[¶14] Here, the State concedes no analysis of the *Waller* factors was conducted for any of the non-public pretrial conferences. In *Morales* we held the absence of *Waller* findings when a Sixth Amendment right to a public trial has been implicated constitutes obvious error. *See Morales*, 2019 ND 206, ¶¶ 25-26. In

5

this case, the district court was required to "articulate its reasons on the record and those reasons must be expressed in findings that enable a reviewing court to exercise its function." *Klem*, 438 N.W.2d at 801. *See also Martinez*, 2021 ND 42, ¶ 22 ("Trial courts are strictly required to make findings before a trial closure, and failure to make each of the findings requires reversal.") (citing *Rogers*, 2018 ND 244, ¶ 19). Without findings on the *Waller* factors we conclude the non-public pretrial conferences were a violation of Pulkrabek's Sixth Amendment right to a public trial constituting obvious error.

[¶15] We find it necessary to address our case law on when reversal is required for a public trial violation. In *Martinez*, 2021 ND 42, ¶ 5, we stated, "structural errors require automatic reversal regardless of whether they were forfeited or waived, including when the error is invited." In *Morales*, 2019 ND 206, ¶ 16, we stated, "Closures of pretrial hearings implicate the public trial right, although they do not always require reversal of a subsequent conviction." (citing *Rogers*, 2018 ND 244, ¶¶ 19-21). In *Rogers*, at ¶ 19, we stated, "In contrast, public trial violations during pretrial hearings have been held to require only a new, public hearing, not automatic reversal." (citing 3 Criminal Constitutional Law § 14A.01[2][f] and *Waller*, 467 U.S. at 50 (ordering new suppression hearing)). When there is a pretrial hearing, substantive motions may be held during the hearing, such as a motion regarding the defendant's competency. In the case of a motion to evaluate the defendant's competency, where there is a public trial violation, reversal is not always required because this Court can remand for a new competency hearing, and whether a new trial is granted would depend upon the outcome of that hearing. *Rogers*, 2018 ND 244, ¶¶ 19-21. To further illustrate, in the context of a public trial violation on a motion to suppress, we stated, "A new trial need be held only if a new, public suppression hearing results in the suppression of material evidence not suppressed at the first trial, or in some other material change in the positions of the parties." *Id.* at ¶ 20 (quoting *Waller*, at 50). But where there is no discussion of the *Waller* factors whatsoever before a closure, reversal is required. *Martinez*, at ¶ 22.

[¶16] Here, the parties and the district court discussed several matters at the pretrial conferences, including the jury selection process, the manner in which

the parties were to assert objections during trial, evidentiary stipulations, and a request by Pulkrabek for his attorney to withdraw as his counsel. There is not a single occurrence at the pretrial conferences that the rest of the trial would be contingent upon, such as the case where there is a competency hearing and a trial will not be held if the defendant is declared incompetent, or if there is a suppression hearing and the key evidence against the defendant is suppressed. Given our case law strictly requiring analysis of the *Waller* factors, we must reverse for a new trial to ensure the fairness, integrity, and public reputation of the justice system. *Morales*, 2019 ND 206, ¶ 34 (citing *State v. Olander*, 1998 ND 50, ¶ 28, 575 N.W.2d 658).

V

[¶17] Because "one structural error is sufficient to require reversal," resolution of the remaining issues raised on appeal are unnecessary to our decision. *Martinez*, 2021 ND 42, ¶ 12. The judgment of conviction is reversed and the case is remanded to the district court for a new trial.

[¶18] Jon J. Jensen, C.J.
     Gerald W. VandeWalle
     Daniel J. Crothers
     Lisa Fair McEvers
     Carol Ronning Kapsner, S.J.

[¶19] The Honorable Carol Ronning Kapsner, S.J., sitting in place of Tufte, J., disqualified.