# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 57

State of North Dakota,                                   Plaintiff and Appellee

v.

Jonathan Garrett Linner,                              Defendant and Appellant

### No. 20210362

Appeal from the District Court of Walsh County, Northeast Judicial District, the Honorable Barbara L. Whelan, Judge.

AFFIRMED.

Opinion of the Court by Bahr, Justice.

Kelley M. R. Cole, State's Attorney, Grafton, ND, for plaintiff and appellee.

Monty G. Mertz, Fargo, ND, for defendant and appellant.

**State v. Linner**
**No. 20210362**

**Bahr, Justice.**

[¶1]   Jonathan Linner appeals from a criminal judgment entered after a jury convicted him of continuous sexual abuse of a child. We conclude no structural error occurred when the district court closed the courtroom for limited voir dire, Linner was not prejudiced or denied due process by the State's voir dire, and the court did not err by ordering no contact with his minor children as a condition of the sentence. We affirm.

I

[¶2]   In 2018, law enforcement investigated terrorizing allegations after one of Linner's children reported to a school counselor Linner threatened the child's mother with a gun because the mother caught the child victim, aged 14, in bed with Linner. The child victim was interviewed and did not disclose any sexual abuse at that time. Linner was subsequently charged and pled guilty to terrorizing with a dangerous weapon.

[¶3]   In May 2020, the child victim came forward and disclosed details regarding Linner's sexual abuse of the child that began when the child was seven years old and continued until the night the mother found them in bed together. The State charged Linner with continuous sexual abuse of a child in violation of N.D.C.C. § 12.1-20-03.1(1), a class AA felony.

[¶4]   In August 2021, the district court held a jury trial. The jury returned a verdict finding Linner guilty of continuous sexual abuse of a child. After a December 2021 sentencing hearing, the court entered a criminal judgment sentencing Linner to life in prison without the possibility of parole. As part of his sentence, the court ordered Linner to have no contact with his children.

II

[¶5]   Linner argues there was structural error in closing the courtroom for limited voir dire. He contends structural error occurred because the

questionnaire given to the prospective jurors exceeded the scope of the district court's *Waller* findings and the order closing the courtroom was not followed.

[¶6] "The structural error doctrine applies to a narrow class of rights, including three Sixth Amendment rights defining the framework of a trial: the right to counsel, the right to self-represent, and the right to a public trial." *State v. Martinez*, 2021 ND 42, ¶ 4, 956 N.W.2d 772 (citing *State v. Rogers*, 2018 ND 244, ¶ 5, 919 N.W.2d 193). A structural error affects the framework within which a trial proceeds and therefore "renders the trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Martinez*, at ¶ 4. This Court applies a de novo standard to review whether facts rise to the level of a public trial violation. *Id.* at ¶ 19. "Voir dire falls within the scope of public trials under the Sixth Amendment." *State v. Decker*, 2018 ND 43, ¶ 9, 907 N.W.2d 378. *See also Martinez*, at ¶ 33 ("the Sixth Amendment public trial right extends to jury selection").

[¶7] "When considering on appeal a defendant's claim that his right to a public trial was violated, we first consider whether the claim of error was preserved at trial. We then consider the threshold question of whether there was a closure implicating the public trial right." *Martinez*, 2021 ND 42, ¶ 3 (citation omitted). If there was a closure, this Court determines "whether the trial court made pre-closure *Waller* findings sufficient to justify the closure." *Id.* When a defendant does not preserve the public trial issue with a timely objection at the trial, this Court reviews only for obvious error. *See id.* at ¶ 12 (discussing *State v. Morales*, 2019 ND 206, 932 N.W.2d 106).

[¶8] Linner and the State filed a Stipulation for Use of Confidential Jury Questionnaire and Limited Closure of *Voir Dire*. In the Stipulation, the parties stipulated to the use of a confidential jury questionnaire, attached to the Stipulation as an exhibit. The parties further stipulated that "private individual" questioning of prospective jurors would be "conducted within the Court's chambers, but on the record," "with regard to the questionnaire provided to the prospective jurors." As stipulated, the private individual questioning of prospective jurors "conducted within the Court's chambers," would only be attended "by the defendant, defendant's counsel, the State's

2

Attorney, a law enforcement officer (sitting in as inconspicuous place as possible), and the individual prospective jurors on a one-by-one basis." The Stipulation further provided "the prospective jurors shall be examined on their answers provided on the questionnaire[.]" Finally, the Stipulation provided the State would give notice of the Stipulation and the press would be given the opportunity to object to the Stipulation at a July 26, 2021 hearing. The stipulated questionnaire contained eleven questions which were to be marked "Yes" or "No."

[¶9]   The district court held a hearing on July 26, 2021. At the hearing, after not receiving any written or oral objections to the Stipulation, the district court made *Waller* findings. It then obtained from Linner an express waiver of his right to a public trial as to the questions on the Jury Questionnaire and private individual questioning of prospective jurors. The court found Linner's waiver was knowing, intelligent, and voluntary.

[¶10] Linner asserts the district court's *Waller* analysis was defective and three of the questions exceeded the scope of the court's findings, i.e., the three questions were broader than what was required to protect the asserted interest. However, Linner acknowledges, and the record shows, Linner knowingly, intelligently, and voluntarily waived his right to a public trial as to the proposed questions. In *Martinez*, this Court concluded "the right to a public trial can be waived according to the same standards of knowing, intelligent, and voluntary waiver that we have applied to other Sixth Amendment rights that implicate structural error such as the right to counsel and the right to a jury trial." 2021 ND 42, ¶ 13. Because Linner knowingly, intelligently, and voluntarily waived his right to a public trial as to the questions on the stipulated Jury Questionnaire, we need not address whether the court's pre-closure *Waller* findings were sufficient to justify the closure as to the stipulated questions.

[¶11] Linner also argues the district court violated its own order by addressing other questions during the closed individual questioning of prospective jurors, such as medical and travel issues. Linner did not object to the questions exceeding the scope of the stipulated closure. Moreover, the individual

questioning was recorded. "When a transcript is available to the public after the trial, all of the values of public access are preserved." *State v. Pulkrabek*, 2022 ND 128, ¶ 12, 975 N.W.2d 572 (quoting *Minneapolis Star & Tribune Co. v. Kammeyer*, 341 N.W.2d 550, 556 (Minn. 1983)). *See also State v. Davis-Heinze*, 2022 ND 201, ¶ 10, 982 N.W.2d 1 ("Although we have 'disapproved of' such off-the-record discussions, these circumstances may not violate the public trial right if this Court is able to review a record of what occurred."); *Morales*, 2019 ND 206, ¶ 17 (public trial right is satisfied by availability of record of proceedings).

[¶12] Linner knowingly, intelligently, and voluntarily waived his right to a public trial as to the questions on the stipulated Jury Questionnaire. Linner further knowingly, intelligently, and voluntarily waived his right to a public trial as to the individual questioning of prospective jurors, including prospective jurors being "examined on their answers provided on the questionnaire[.]" Linner did not object to any additional questions asked during the questioning of individual prospective jurors. Not only does the transcript of the individual questioning serve the purpose of a public trial, it shows most of the additional follow-up questions related to issues of bias articulated in the questionnaire and, thus, were within the scope of the waiver. *Morales*, 2019 ND 206, ¶ 22 (discussing four basic principles embodied in the public trial right). Under the facts of this case, we conclude the district court did not violate Linner's Sixth Amendment right to a public trial.

III

[¶13] Linner argues the State's voir dire was prejudicial or denied him due process of law.

[¶14] We apply the de novo standard of review "to whether facts rise to the level of a constitutional violation, including a claim that prosecutorial misconduct denied a defendant's due process right to a fair trial." *State v. Patterson*, 2014 ND 193, ¶ 3, 855 N.W.2d 113 (quoting *State v. Pena Garcia*, 2012 ND 11, ¶ 6, 812 N.W.2d 328). However, when the defendant does not object to the alleged errors at trial, as in this case, "our review is limited to determining if the prosecutor's conduct prejudicially affected [the defendant's]

4

substantial rights, so as to deprive him of a fair trial." *State v. Duncan*, 2011 ND 85, ¶ 18, 796 N.W.2d 672 (quoting *State v. Burke*, 2000 ND 25, ¶ 22, 606 N.W.2d 108). "This Court 'exercise[s] [its] authority to notice obvious error cautiously and only in exceptional circumstances in which the defendant has suffered serious injustice.'" *Patterson*, at ¶ 3 (quoting *Duncan*, at ¶ 18).

[¶15] "An obvious error or defect that affects substantial rights may be considered even though it was not brought to the court's attention." N.D.R.Crim.P. 52(b). When analyzing claims of obvious error, we may "notice a claimed error that was not brought to the attention of a trial court if there was (1) error, (2) that is plain, and (3) affects substantial rights." *Patterson*, 2014 ND 193, ¶ 4 (quoting *State v. Clark*, 2004 ND 85, ¶ 6, 678 N.W.2d 765). "In order to affect 'substantial rights,' an error must have been prejudicial, or affected the outcome of the proceeding." *State v. Erickstad*, 2000 ND 202, ¶ 22, 620 N.W.2d 136. The defendant has the burden to show the alleged error was prejudicial. *Patterson*, at ¶ 4.

[¶16] "Even if the defendant meets his burden of establishing obvious error affecting substantial rights, the determination whether to correct the error lies within the discretion of the appellate court, and the court should exercise that discretion only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Patterson*, 2014 ND 193, ¶ 4 (quoting *State v. Olander*, 1998 ND 50, ¶ 16, 575 N.W.2d 658). "An alleged error does not constitute obvious error unless there is a clear deviation from an applicable legal rule under current law." *Id.* (quotation marks omitted).

[¶17] Linner contends the State engaged in an "education and sales pitch" to the jurors undermining the presumption of innocence and misstating the burden of proof. He contends the State, during the voir dire process, improperly informed the jury of facts, represented as fact there would be no medical evidence of years of sexual abuse, and "primed" the jury to know and care about the victim on a first-name basis. Although he does not cite any specific cases relating to the voir dire process, Linner asserts the State's statements resulted in an unfair trial and a deprivation of due process.

[¶18] The State responds the alleged errors did not have a significant impact on the jury's verdict in this case and did not affect Linner's right to a fair trial. The State contends the comments complained of are taken out of context and there were many other times when the burden of proof was correctly stated to the jury. Further, the State relies on the jury instructions as curing any error and possible prejudice, notes the jury is presumed to follow the court's instructions, and argues this Court must examine the statements within the entire record and the probable effect of the actions alleged to be in error in light of all the evidence.

[¶19] When read in context, the alleged statements do not appear improper. However, even if they were, we are unable to conclude the statements had the probable effect of affecting the outcome of the proceedings. On multiple occasions the parties and the district court informed the jury of the correct burden of proof, including in the instructions. "We presume the jury follows the judge's instructions." *State v. Skorick*, 2002 ND 190, ¶ 17, 653 N.W.2d 698. Any prejudice from the State's statements were minimized by the court's instructions. *Patterson*, 2014 ND 193, ¶ 14. Because Linner's substantial rights were not affected so as to constitute obvious error, his right to due process was not violated.

IV

[¶20] Linner was convicted of continuous sexual abuse of a child under N.D.C.C. § 12.1-20-03.1(1), class AA felony, and was sentenced to life in prison without parole. In the criminal judgment's "[c]ommitments" section, the district court included the following language: "2. Defendant shall have no contact with his wife, children, brother or his wife."

[¶21] Linner argues the district court improperly ordered no contact with his minor children as a condition of the sentence. He contends the court lacked authority to issue the "post-disposition order," relying primarily on N.D.C.C. § 12.1-31.2-02 and *State v. Wilder*, 2018 ND 93, ¶ 17, 909 N.W.2d 684. "Appellate review of a criminal sentence is generally limited to determining whether the district court acted within the statutory sentencing limits or substantially relied upon an impermissible factor." *Wilder*, at ¶ 17 (citing *State v. Corman*,

6

2009 ND 85, ¶ 15, 765 N.W.2d 530). Statutory interpretation presents a question of law, fully reviewable on appeal. *Id.*

[¶22] Linner's reliance on N.D.C.C. § 12.1-31.2-02 and *Wilder*, 2018 ND 93, are misplaced. Section 12.1-31.2-02, N.D.C.C., relates to orders prohibiting contact when a defendant is released from custody pending arraignment or trial. Linner was not released from custody pending arraignment or trial; Linner was sentenced after being convicted of continuous sexual abuse of a child. *Wilder* involved a sentence after a conviction of murder where there was no statutory authority to order no contact as part of a prison sentence. 2018 ND 93, ¶ 19. In *Wilder*, this Court explained "a sentencing court cannot order no contact as part of an executed sentence in the absence of a specific statutory provision explicitly allowing it." *Id.* at ¶ 20. Such a statute exists in this case.

[¶23] Section 12.1-32-01, N.D.C.C., authorizes a district court to sentence an individual convicted of a class AA felony to a maximum sentence of life imprisonment without parole. Section 12.1-32-02, N.D.C.C., authorizes the court to sentence a defendant to one or more of a number of alternatives, including a term of imprisonment, probation, fines, restitution, and sex offender treatment. Section 12.1-32-02(1), N.D.C.C., amended after *Wilder*, 2019 N.D. Sess. Laws ch. 117, § 1, specifically provides: "If the person is sentenced to a term of imprisonment, the court may prohibit the person from contacting the victim during the term of imprisonment. For purposes of this subsection, 'victim' means victim as defined in section 12.1-34-01."

[¶24] Under N.D.C.C. § 12.1-34-01(10), "'[v]ictim' means a person who suffers direct or threatened physical, financial, or psychological harm as the result of the commission or attempted commission of a crime or delinquent act or against whom the crime or delinquent act is committed."

[¶25] Article I, section 25(1)(b), of the North Dakota Constitution provides all crime victims "[t]he right to be free from intimidation, harassment, and abuse." Section 25(4) provides a similar definition of "victim" as the above-quoted statute, but further clarifies "[i]f a victim is . . . *a minor*, the victim's spouse, *parent*, grandparent, child, sibling, grandchild, or guardian, and *any person*

7

*with a relationship to the victim that is substantially similar to a listed relationship*, may also exercise *these rights*." N.D. Const. art. I, § 25(4) (emphasis added).

[¶26] "The word 'or' is disjunctive in nature and ordinarily indicates an alternative between different things or actions." *State v. G.C.H.*, 2019 ND 256, ¶ 15, 934 N.W.2d 857 (quoting *Indus. Contractors, Inc. v. Workforce Safety & Ins.*, 2009 ND 157, ¶ 12, 772 N.W.2d 582). Thus, under both N.D.C.C. § 12.1-34-01(10) and N.D. Const. art. I, § 25(1)(b), the victim can be the person against whom the crime was committed or a person who suffers direct or threatened physical or psychological harm as the result of the commission of the crime. A district court can reasonably conclude a minor sibling of a minor victim of continuous sexual abuse suffers direct psychological harm and threatened physical and psychological harm.

[¶27] Section 12.1-31.2-02, N.D.C.C., explicitly authorizes a sentencing court to order no contact with the victim during the term of imprisonment. On review, based on the nature of the crime and the underlying facts, we conclude the statutory definition of "victim" under N.D.C.C. § 12.1-34-01(10) is broad enough to encompass Linner's children. Moreover, our state constitution provides family members and people with "substantially similar" relationships with the victim may also exercise the rights afforded to a minor victim. *See* N.D. Const. art. I, § 25(4).

[¶28] At the sentencing hearing, the State asked the district court "specifically on behalf of the victims and family involved in this case that there be a no contact order issued, that [Linner] not be allowed to have contact with those family members. . . . I am talking about the wife and the six children, as well as the former guardians of [the child victim.]" In sentencing Linner, the court specifically found the evidence showed Linner has "a very, very high level of dangerousness." On the basis of the evidence presented at trial, there is evidence in the record supporting the court's findings and its exercise of discretion in imposing the no contact order.

8

[¶29] Linner's argument on appeal is without merit. The district court did not err in ordering no contact with his minor children as a condition of the sentence.

V

[¶30] The criminal judgment is affirmed.

[¶31] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr