824 F.2d 1046
 263 U.S.App.D.C. 66, 56 USLW 2116, 14
Media L. Rep. 1334
 CABLE NEWS NETWORK, INC., Capitol Cities/ABC, Inc., CBS,
Inc., and National Broadcasting Company, Inc., Appellants,
v.
UNITED STATES of America and Michael K. Deaver.
and consolidated case.
 No. 87-5245.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued July 15, 1987.
Decided July 15, 1987.
 
 Appeal from the United States District Court for the District of Columbia (Civil Action No. 87-096).
 Timothy B. Dyk, Kevin T. Baine and David E. Kendall, Washington, D.C., were on appellants' motions for summary reversal.
 Whitney North Seymour, Jr., New York City, Herbert Miller, Jr., Randall J. Turk and Stephen L. Braga, Washington, D.C., were on appellees' oppositions to appellants' motions for summary reversal.
 Before STARR and SILBERMAN, Circuit Judges, and McGOWAN, Senior Circuit Judge.
 On Motions for Summary Reversal
 PER CURIAM:
 
 
 1
 We have for resolution a motion by several representatives of the news media which are seeking to cover and report on an ongoing criminal trial. They seek summary reversal of an order entered by the District Court on July 14, 1987, denying their request that voir dire of prospective jurors be conducted in open court.
 
 
 2
 The events that gave rise to this motion began with the distribution by the District Court of a questionnaire containing approximately forty questions to prospective jurors. The responses to these questionnaires raised concerns on the part of the trial judge that many questions involved matters of personal privacy. On the basis of this concern, the District Judge refused appellants' request for open voir dire, determining instead that voir dire examinations would be conducted in camera save for any prospective jurors who elected to be questioned in open court. At the same time, the court ruled that transcripts of the examinations and completed copies of the questionnaires would be made public as soon as possible, with redactions limited to those matters that the judge specifically found entitled to protection from public disclosure and dissemination.
 
 
 3
 The District Court accordingly advised the venire members that, although it would hold as much of the proceedings in public as possible, it would leave to the discretion of each juror whether he or she would be questioned in open court or in camera on matters in the questionnaire. Those individuals willing to be questioned publicly were directed to leave their names with the marshal and to return at that time to the jury lounge. Those who preferred questioning in private were asked to remain seated. Five of the approximately thirty prospective jurors volunteered to be questioned in open court.
 
 
 4
 * Appellants contend that the District Court's actions in closing the voir dire proceedings violate the standards for limiting public and press access to criminal voir dire enunciated by the Supreme Court in Press-Enterprise Co. v. Superior Court of California, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984). We agree and therefore reverse.
 
 
 5
 The Press-Enterprise Court made it abundantly clear that the process of juror selection in a criminal trial is of vital importance not only to the accused but more broadly to the criminal justice system and the public. After reviewing the rich history and tradition of open criminal proceedings in English and American courts, the Court concluded that "[t]he open trial ... plays as important a role in the administration of justice today as it did for centuries before our separation from England." Id. at 508, 104 S.Ct. at 823. In articulating the safeguards necessary to protect the "value of openness" in criminal proceedings, id., the Court borrowed from its holding two years previously in Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982):
 
 
 6
 [T]he circumstances under which the press and public can be barred from a criminal trial are limited; the State's justification in denying access must be a weighty one. Where ... the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest.
 
 
 7
 Id. at 606-07, 102 S.Ct. at 2620, quoted in Press-Enterprise, 464 U.S. at 509-10, 104 S.Ct. at 824. Echoing this passage from Globe Newspaper, the Press-Enterprise Court held squarely that in the voir dire setting "[t]he presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Id. at 510, 104 S.Ct. at 824.
 
 
 8
 In reaching this conclusion, the Press-Enterprise Court set out three conditions necessary to establish that closure of the voir dire is justified. First, trial courts must make findings that an open voir dire proceeding threatens either the defendant's Sixth Amendment right to a fair trial or a prospective juror's privacy interests. Id. at 511, 104 S.Ct. at 825. Second, in order to "minimize the risk of unnecessary closure" trial courts should require prospective jurors to make "affirmative request[s]" for private voir dire examination. Id. at 512, 104 S.Ct. at 825. Finally, trial courts must consider whether alternatives to closure are available that will adequately protect the interests of prospective jurors. Id. at 511, 104 S.Ct. at 825.
 
 
 9
 We are obliged to conclude that the holding of Press-Enterprise requires reversal of the District Court's ruling in this case. In addition, we are persuaded that the merits of appellants' motion are so clear that summary reversal is appropriate. See, e.g., Sills v. Bureau of Prisons, 761 F.2d 792, 793 (D.C.Cir.1985); United States v. Glover, 731 F.2d 41, 42 (D.C.Cir.1984) (per curiam); Walker v. Washington, 627 F.2d 541, 545 (D.C.Cir.) (per curiam), cert. denied, 449 U.S. 994, 101 S.Ct. 532, 66 L.Ed.2d 292 (1980).
 
 II
 
 10
 The District Court's order fails to meet any of the three conditions articulated in Press-Enterprise for closure of voir dire.
 
 
 11
 First, the District Court had no evidence in the record and made no findings that public interrogation of any individual member of the voir dire would "touch[ ] on deeply personal matters that [the juror] has legitimate reasons for keeping out of the public domain." Press-Enterprise, 464 U.S. at 511, 104 S.Ct. at 825. Indeed, the District Court expressly declined to make such findings:
 
 
 12
 It is not possible for me to exercise discretion in any objective fashion as to what is or is not to be private. Things are private simply because they are private to people. Not on any objective standard. What is sensitive, personal information for each of these [prospective] jury members is a matter which is entirely within their own hearts. They have to decide what is personal, ... and I have to trust to their judgment in deciding whether or not they can ... reveal the information that they are being asked to reveal.
 
 
 13
 Excerpt of Proceedings, United States v. Deaver, Cr. No. 87-096 at 10 (D.D.C. July 14, 1987). On the basis of this reasoning, the District Court, having determined that certain voir dire questions "deal[t] with matters which are sensitive, personal, private information," id. at 12, left to the prospective jurors' absolute discretion whether voir dire on matters covered by the questionnaire would take place in public or in camera.
 
 
 14
 To be sure, the District Court could reasonably have concluded that certain questions contained in the questionnaire may, in individual cases, have called for responses of the "deeply personal" sort contemplated by Press-Enterprise. The trial court believed that no objective standard was available to guide his determination as to whether a juror's request for private questioning about a particular matter was appropriate. But Press-Enterprise is to the contrary; it requires the trial court to determine whether a juror's request is "legitimate." 464 U.S. at 511, 104 S.Ct. at 825. The Press-Enterprise Court recognized that in the case before it some questions, although appropriate to pose to prospective jurors, by their nature might have "give[n] rise to legitimate privacy interests of those persons." Id. at 512, 104 S.Ct. at 825. Nonetheless, this fact alone was insufficient to justify closure, because the trial court had not balanced the particular interests in privacy expressed by individual jurors against what the Court described as the "value of openness." Id. The District Court in this case likewise failed to make individualized findings that specific jurors had compelling reasons for wishing to keep private responses to particular questions which, in each case, outweighed the value to the public of an open voir dire. The Press-Enterprise Court made clear that without such findings, sufficiently detailed to permit review at the appellate level, it is "not possible to conclude that closure [is] warranted." Id. at 511, 104 S.Ct. at 825 (footnote omitted).
 
 
 15
 Second, the District Court did not, as Press-Enterprise demands, "requir[e] the prospective juror[s] to make an affirmative request" for an in camera voir dire interview. Id. at 512, 104 S.Ct. at 825. (Such a request could, as movants concede, be made in writing.) This requirement, the Press-Enterprise Court made clear, is necessary to "ensure that there is in fact a valid basis for a belief that disclosure infringes a significant interest in privacy." Id. The District Court, in our view, stood this requirement on its head by permitting prospective jurors to elect closed voir dire simply by remaining mute. If anything, this procedure facilitated closure based on possibly insignificant privacy interests, precisely the prospect the "affirmative request" requirement aims to avoid.
 
 
 16
 Third, the District Court acted apparently without considering alternatives that might minimize the degree of closure. Cf. id. at 513, 104 S.Ct. at 825. By way of obvious example, the District Court could have conducted voir dire in open court, responding to individual expressions of specific concern over particular questions by permitting interrogation in camera where warranted under prevailing law. Although Press-Enterprise expressly contemplates a procedure of this sort, the record discloses no consideration of such an alternative in this case. See Excerpt at 3.
 
 III
 
 17
 In sum, the District Court failed to abide by the standards set forth in Press-Enterprise for closing voir dire proceedings in criminal cases. The order of the District Court is therefore reversed. Voir dire proceedings henceforth shall be conducted in accordance with this opinion. Mandate shall issue forthwith.
 
 
 18
 It is so ordered.