# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2022 ND 201

State of North Dakota,

Plaintiff and Appellee

v.

Wendy Michelle Davis-Heinze,

Defendant and Appellant

### No. 20220049

Appeal from the District Court of Barnes County, Southeast Judicial District, the Honorable Jay A. Schmitz, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Tonya Duffy, State's Attorney, Valley City, N.D., for plaintiff and appellee; submitted on brief.

Kiara C. Kraus-Parr, Grand Forks, N.D., for defendant and appellant.

## State v. Davis-Heinze
## No. 20220049

**Tufte, Justice.**

[¶1]   Wendy Davis-Heinze appeals from a criminal judgment convicting her of reckless endangerment. She argues on appeal that the district court conducted an off-the-record discussion with counsel outside the courtroom and outside of the view of the public in violation of her right to public trial under the Sixth Amendment. She also argues there was insufficient evidence to convict her. We conclude the evidence was sufficient to support the conviction, and the non-public discussion was not a trial closure in violation of the Sixth Amendment public trial right. We affirm.

I

[¶2]   Davis-Heinze was involved in an altercation with her then brother-in-law, Martin Heinze. She pointed a gun at him, chased him with her vehicle as he was attempting to escape in his tractor, and rammed his tractor with her vehicle. The State charged her with one count of reckless endangerment under circumstances manifesting an extreme indifference to the value of human life. During deliberations, the jury asked the court to replay an audio recording and submitted a written question to the court. While the jury was in the courtroom after the court replayed the recording, a juror pointed out to the court that the jury had asked a question on the sheet requesting to review the recording. The trial judge directed the attorneys to approach and then step outside of the courtroom to discuss how to respond to the question. There is no transcript of what was said outside the courtroom.

II

[¶3]   Davis-Heinze argues the court violated her right to public trial, because the court closed part of the proceedings without *Waller* analysis and Davis-Heinze did not waive her public trial right.

[¶4]   "In all criminal prosecutions, the accused shall enjoy the right to a . . . public trial . . . ." U.S. Const. amend. VI.; N.D. Const. art. 1, § 12 ("In criminal

prosecutions . . . the party accused shall have the right to a . . . public trial.”). When considering a claimed violation of the right to public trial,

> we first consider whether the claim of error was preserved at trial. We then consider the threshold question of whether there was a closure implicating the public trial right. If we determine there was a closure, we determine whether the trial court made pre-closure *Waller* findings sufficient to justify the closure.

*State v. Pendleton*, 2022 ND 149, ¶ 4, 978 N.W.2d 641 (cleaned up). “Whether the facts rise to the level of a constitutional violation is reviewed de novo on appeal.” *State v. Walbert*, 2021 ND 49, ¶ 6, 956 N.W.2d 384. “[T]he Sixth Amendment public trial right attaches from the beginning of adversarial proceedings through sentencing.” *State v. Martinez*, 2021 ND 42, ¶ 19, 956 N.W.2d 772. When a court orders a closure during trial that is inconsistent with *Waller*, the remedy is a new trial. *State v. Morales*, 2019 ND 206, ¶ 21, 932 N.W.2d 106.

[¶5]   The Sixth Amendment guarantees a criminal defendant the right to a public trial so the public may see the defendant “is fairly dealt with and not unjustly condemned,” and a public trial encourages witnesses to testify, discourages perjury, and ensures the judge and prosecutor responsibly fulfill their duties. *Waller v. Georgia*, 467 U.S. 39, 46 (1984). The right lends “credibility to criminal trials by allowing the public to see that an accused is dealt with fairly.” *United States v. Norris*, 780 F.2d 1207, 1210 (5th Cir. 1986). This right also protects the rights of the public and press to access an open courtroom. *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1910 (2017). A trial that is “fundamentally fair” to the defendant might still violate the public trial right if it violates the rights of the public and the press. *Id.*

### III

### A

[¶6]   If an error is not preserved, then it is either a forfeited error or a waived error. *State v. Pulkrabek*, 2022 ND 128, ¶ 7, 975 N.W.2d 572. Waiver is the voluntary relinquishment of a right, and forfeiture is the failure to timely

assert a right. *Id.* This Court reviews forfeited errors only for obvious error. *Morales*, 2019 ND 206, ¶ 14. An obvious error is present if the defendant demonstrates "(1) an error, (2) that was plain, and (3) affected his substantial rights." *Id.* at ¶ 24.

[¶7] The structural error doctrine applies to certain Sixth Amendment rights, including the right to a public trial. *Pulkrabek*, 2022 ND 128, ¶ 7. When a claim of structural error is reviewed under the obvious error standard, the defendant need not demonstrate that the error affected the defendant's substantial rights or the trial's outcome because structural errors "defy analysis by 'harmless-error' standards." *Pulkrabek*, at ¶ 7 (citations omitted); *Martinez*, 2021 ND 42, ¶¶ 4, 12; *Morales*, 2019 ND 206, ¶ 26.

[¶8] Davis-Heinze did not object either before or after the court instructed counsel to step outside the courtroom to discuss how to respond to the jury question. The record reveals no waiver of the public trial right under the standard described in *Martinez*. This is a forfeited error, and thus we review only for obvious error.

B

[¶9] We next consider whether this conference between the trial judge and the attorneys constituted a closure of the trial. We have emphasized that courtroom closures should be rare and that district courts may not close trials merely for convenience or because both parties prefer to close a trial from the public. *Martinez*, 2021 ND 42, ¶ 2. "Matters traditionally addressed during private bench conferences or conferences in chambers generally are not closures implicating the Sixth Amendment." *Id.* at ¶ 20 (citing *State v. Smith*, 876 N.W.2d 310, 329 (Minn. 2016)). This Court has held that these "brief sidebars or bench conferences conducted during trial to address routine evidentiary or administrative issues" do not violate the public trial right when the court conducts them outside the hearing of the jury if the public and jury are able to view the bench conference and the court promptly makes available a record of what the parties discussed. *Id.* (citing *Morales*, 2019 ND 206, ¶ 17); *Smith*, 876 N.W.2d at 330 (citing *Minneapolis Star & Tribune Co. v Kammeyer*,

341 N.W.2d 550, 560 (Minn. 1983)). Without a transcript, we may be unable to determine whether a non-public conference related only to matters traditionally held at sidebar or in chambers and thus whether or not there was a closure.

[¶10] In the event that a portion of a public trial is held off record, a judge may in some circumstances avoid a violation of the public trial right. *Pendleton*, 2022 ND 149, ¶ 10. The judge must summarize on the record what was discussed at the conference, the conference must have occurred in open court, and both parties must "have a chance to object to the accuracy of the summary or supplement the record as to the off-the-record events." *Id*. Although we have "disapproved of" such off-the-record discussions, these circumstances may not violate the public trial right if this Court is able to review a record of what occurred. *Id*.

[¶11] In this case, the record shows that a discussion about how to respond to a jury question was held outside of the courtroom and out of sight of the public and jury. The jury had submitted a note asking to hear an audio recording again. The note is preserved in the record and includes a second question: "was there a statement from Wendy on the night of the incident?" The transcript provides the following about the events argued to be a closure:

> UNIDENTIFIED JUROR: We had a question if I can ask?
> THE COURT: We really need to have you write them down.
> UNIDENTIFIED JUROR: It's on that sheet as well.
> THE COURT: Oh, I only saw about listening. Do you have that question?
> THE BAILIFF: She's got it. Brandi's [the Deputy Clerk of Court] got it, Judge.
> THE COURT: All right. Counsel approach. We'll step outside and I'll tell you what I'm thinking.
> (Off the record.)
> THE COURT: Back on the record. If I'm correct, the question that we're being asked is, Was there a statement from Wendy on the night of the incident? The answer is, as a matter of law, is that both parties have rested their evidence. The evidence that is in front of you that has been submitted during the trial is the evidence upon

4

which you must decide this case. So that question cannot be
answered any further than that.

Thank you. You may return to your jury room to continue your
deliberations.

[¶12] It is apparent from the circumstances that rather than excuse the jury
so that the court could discuss the response with counsel outside their
presence, the court determined it would be more expeditious to step outside
the courtroom with counsel. There is no transcript of what was discussed. But
the court indicated before going off the record what the scope of the discussion
would be: to advise counsel what the court's intended response was before it
was given to the jury. After the trial judge and the attorneys returned to the
courtroom, the court restated and answered the question and then excused the
jury to continue deliberations. We have a record of the question asked by the
jury, an advance summary of what the sidebar discussion would address, and
then a prompt on-the-record statement of what the court and attorneys had
concluded.

[¶13] It would have been preferable to have had this discussion in the
courtroom and in public view outside the hearing of the jury. North Dakota
courtrooms have both practical and technological ways to have brief
conversations between the judge and the attorneys outside the hearing of the
jury while maintaining a stenographic or digital audio recording of the
proceedings. But consistent with *Pendleton*, 2022 ND 149, ¶ 10, we conclude
this brief discussion between the trial judge and counsel was not a trial closure.
We affirm.

IV

[¶14] Davis-Heinze also argues the evidence in support of her conviction was
not sufficient. This Court has explained the standard of review for insufficiency
of evidence:

> Appellate review of the sufficiency of the evidence for a jury verdict
> is very limited. When the sufficiency of evidence to support a
> criminal conviction is challenged, this Court merely reviews the
> record to determine if there is competent evidence allowing the

5

jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction. The defendant bears the burden of showing the evidence reveals no reasonable inference of guilt when viewed in the light most favorable to the verdict. When considering insufficiency of the evidence, we will not reweigh conflicting evidence or judge the credibility of witnesses.... A jury may find a defendant guilty even though evidence exists which, if believed, could lead to a verdict of not guilty.

*State v. Dahl*, 2009 ND 204, ¶ 6, 776 N.W.2d 37.

V

[¶15] Section 12.1-17-03, N.D.C.C, Reckless Endangerment, provides:

A person is guilty of an offense if he creates a substantial risk of serious bodily injury or death to another. The offense is a class C felony if the circumstances manifest his extreme indifference to the value of human life. Otherwise it is a class A misdemeanor. There is risk within the meaning of this section if the potential for harm exists, whether or not a particular person's safety is actually jeopardized.

A person commits reckless endangerment when his "conduct manifests an extreme indifference to human life and there is no evidence of an intent to kill." *Dominguez v. State*, 2013 ND 249, ¶ 19, 840 N.W.2d 596. The "defendant need not actually endanger anyone to be guilty of reckless endangerment." *Dahl*, 2009 ND 204, ¶ 32 (citing *State v. Meier*, 422 N.W.2d 381, 384 (N.D. 1988)). The law presumes "that recklessness and danger existed if the defendant pointed a gun at or in the direction of a person, whether or not the defendant believed the gun to be loaded." *Id.*

[¶16] In *Meier*, the defendant was convicted of reckless endangerment for pointing a rifle at officers, but argued that he could not have recklessly endangered the officers because his rifle was unloaded. *Meier,* 422 N.W.2d at 383. This Court upheld the conviction under N.D.C.C. § 12.1-17-03, which states that reckless endangerment has occurred when "the potential for harm exists, whether or not a particular person's safety is actually jeopardized." *Id.*

6

at 384. "The potential for harm exists any time a gun is pointed at another because experience has too often shown that a gun may be loaded, regardless of what the actor may believe." *Id*. This Court also based its determination on the presumption that a defendant commits reckless endangerment when he points a firearm at another. *Id*.

[¶17] *Meier* guides our decision here. Martin Heinze testified that Davis-Heinze repeatedly pointed a firearm at him. An officer testified that the gun was functional and that the barrel was not actually bent, but only appeared bent. The officer also testified that Heinze's description of the gun that Davis-Heinze pointed at him matched the gun the officer recovered from Davis-Heinze's house. A potential for harm exists when an individual points a firearm at another person. There was conflicting testimony regarding the functionality of the firearm, but it is not this Court's place to reweigh the evidence. Just as a firearm believed to be unloaded may still pose a danger as a result of a mistaken belief it is unloaded, a firearm believed to be inoperable may pose a similar potential for harm. The jury also had additional evidence including photographs of the crime scene, Heinze's 911 calls, and body/dash cam recordings from the responding officers as well as Davis-Heinze's firearm. We conclude there was sufficient competent evidence allowing the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction.

VI

[¶18] The criminal judgment is affirmed.

[¶19] Jon J. Jensen, C.J.
Gerald W. VandeWalle
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte

7