# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 115

State of North Dakota,                                    Plaintiff and Appellee

v.

Susan Kaye Coons,                                    Defendant and Appellant

## No. 20220289

Appeal from the District Court of Ward County, North Central Judicial District, the Honorable Gary H. Lee, Judge.

REVERSED.

Opinion of the Court by Tufte, Justice, in which Chief Justice Jensen and Justice Bahr joined. Justice Crothers filed a dissenting opinion, in which Justice McEvers joined.

Tiffany M. Sorgen, Assistant State's Attorney, Minot, N.D., for plaintiff and appellee.

Benjamin C. Pulkrabek, Mandan, N.D., for defendant and appellant.

**Tufte, Justice.**

[¶1]  Susan K. Coons appeals from a criminal judgment finding her guilty of forgery, in violation of N.D.C.C. § 12.1-24-01(1)(b). She argues the district court erred by closing the courtroom without making sufficient findings and making a prejudicial and biased statement in front of the jury. We reverse.

I

[¶2]  During jury selection, the district court informed the jury panel that the potential jurors had the option to speak with the court "in private" in a separate room if they had information to share that might be embarrassing or intrusive. After general questioning of the panel, the court, Coons, the attorneys for both Coons and the State, and an officer met in a private room and conducted individual questioning of three prospective jurors on the record. Coons argues on appeal that this procedure for individual questioning constituted a trial closure and violated her right to public trial.

[¶3]  At trial, defense counsel asked a witness about a probate proceeding in which Coons had been involved. The district court interjected, commenting that "[y]our client lost in the probate proceeding," and prevented further testimony about the proceeding. On appeal, Coons argues that this statement demonstrated bias and prejudice against her.

II

[¶4]  Coons argues that the district court violated her right to public trial under the Sixth Amendment of the United States Constitution. When considering a claimed violation of the right to a public trial,

> we first consider whether the claim of error was preserved at trial. We then consider the threshold question of whether there was a closure implicating the public trial right. If we determine there was a closure, we determine whether the trial court made pre-closure *Waller* findings sufficient to justify the closure.

*State v. Davis-Heinze*, 2022 ND 201, ¶ 4, 982 N.W.2d 1 (quoting *State v. Pendleton*, 2022 ND 149, ¶ 4, 978 N.W.2d 641). This Court reviews a trial court's *Waller* findings for clear error and "its application of the law to those findings de novo." *State v. Martinez*, 2021 ND 42, ¶¶ 3, 19, 956 N.W.2d 772 (citing *State v. Rogers*, 2018 ND 244, ¶ 3, 919 N.W.2d 193). "'[T]he Sixth Amendment public trial right attaches from the beginning of adversarial proceedings through sentencing.'" *Id.* at ¶ 19 (quoting *State v. Morales*, 2019 ND 206, ¶ 16, 932 N.W.2d 106). The defendant bears the burden of demonstrating a public trial violation occurred. *State v. Frederick*, 2023 ND 77, ¶ 7, 989 N.W.2d 504.

[¶5] This Court reviews forfeited errors for obvious error. *Id.* (citing N.D.R.Crim.P. 52(b)). To establish obvious error, the appellant must demonstrate "(1) an error, (2) that was plain, and (3) affected his substantial rights." *Davis-Heinze*, 2022 ND 201, ¶ 6. The structural error doctrine applies to the public trial right. *Rogers*, 2018 ND 244, ¶ 5. "A structural error is a 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" *Id.* at ¶ 4 (quoting *Johnson v. United States*, 520 U.S. 461, 468 (1997)). When the claim of error is one of structural error, the appellant need not demonstrate element three of obvious error, that the error affected his substantial rights, because such errors "defy analysis by harmless-error standards." *Davis-Heinze*, 2022 ND 201, ¶ 7 (cleaned up).

III

A

[¶6] During general questioning of the panel, one prospective juror indicated she preferred to respond to a question in private. That juror and two other prospective jurors indicated they knew something about the case, and the district court and both attorneys agreed to defer further questioning of those jurors. Coons did not object to the court's stated intent to hold further questioning in a separate room. Although there was no objection or other indication of disagreement with the court's procedure for private questioning, Coons did not waive her right to a public trial according to the requirements we described in *Martinez*. 2021 ND 42, ¶ 18. On this record, we conclude Coons

2

did not preserve the claimed public trial error at trial, nor did she waive it. We review this forfeited error for obvious error. *Id*. at ¶ 4.

B

[¶7] The right to a public trial applies during jury selection. *Presley v. Georgia*, 558 U.S. 209, 213-14 (2010) (per curiam). A typical public trial claim asserts the public was excluded from the courtroom where the trial was being held. *Frederick*, 2023 ND 77, ¶ 8. In contrast, here the trial proceedings were removed from the public courtroom to a different room. For the reasons stated below, we conclude there was a closure for purposes of the public trial right because individual questioning of prospective jurors occurred in private without opportunity for public observation.

[¶8] Addressing a First Amendment claim, the United States Supreme Court explained that individual questioning of jurors described by the trial court as "in private" was a closure triggering constitutional scrutiny. *Press-Enterprise Co. v. Superior Court of Cal.*, 464 U.S. 501, 503 (1984). In that case, three days of general questioning were conducted in open court while six weeks of individual questioning of prospective jurors were closed to the public. *Id*. When a prospective juror indicates a belief that a response will be damaging or embarrassing, the individual "may properly request an opportunity to present the problem to the judge *in camera* but with counsel present and on the record." *Id*. at 512. The Court explained, however, that such a "limited closure" must be no broader than necessary and supported by adequate findings. *Id*. The Sixth Amendment right at issue here is "no less protective" than the First Amendment right at issue in *Press-Enterprise*. *Martinez*, 2021 ND 42, ¶ 39.

[¶9] The District of Columbia Court of Appeals wrote that jury selection conducted in open court is not a closure but a reasonable alternative to closure even if some members of the public have an obstructed view, or if the court employs a "husher" to prevent some in attendance from hearing what is being said. *Blades v. United States*, 200 A.3d 230, 238-41 (D.C. 2019). The court distinguished this procedure from a closure because individual questioning was held "within the view" of the public. *Id*. at 239-40 (concluding this process is an alternative to closure rather than a closure subject to the requirements

3

of *Waller*). "When questioning occurs at the bench, the public can still observe the proceedings, thus furthering the values that the public trial right is designed to protect, and can hear the general questions posed to the jury panel." *Id.* at 238 (cleaned up); *see also Copeland v. United States*, 111 A.3d 627, 633 (D.C. 2015) ("Appellant cites no authority, and we can find none, holding that the practice of conducting a limited amount of individual [jury selection] at the bench with a 'husher' on violates a defendant's right to a public trial.").

[¶10] "[C]ourts have found there to be full or partial courtroom closures only where some or all members of the public are precluded from perceiving contemporaneously what is transpiring in the courtroom, because they can neither see nor hear what is going on." *Blades*, 200 A.3d at 239. The court cited five cases in support of this proposition. *Id.* (citing *Presley*, 558 U.S. 209; *Cable News Network, Inc. v. United States*, 824 F.2d 1046 (D.C. Cir. 1987); *Barrows v. United States*, 15 A.3d 673, 679 (D.C. 2011); *Williams v. United States*, 51 A.3d 1273, 1283 (D.C. 2012) (perceiving "no difference of significance for Sixth Amendment purposes between excluding the public from the courtroom during *voir dire*, as in *Presley* and *Barrows*, and removing the *voir dire* proceedings from the courtroom to another location from which the public is excluded"); *ABC, Inc. v. Stewart*, 360 F.3d 90, 95 (2d Cir. 2004) (concluding that individual questioning of prospective jurors in a private room with a transcript available the next day was a closure triggering constitutional scrutiny)). *See also Copeland,* 111 A.3d at 633 (explaining that a closure occurs when the court excludes persons from the courtroom during jury selection or by moving portions of jury selection outside of the courtroom "to a location not observable by the public, such as a jury room").

[¶11] In *State v. Morales*, we considered two California appellate cases which distinguished between peremptory challenges held in open court and in view of the public, which was not a closure, and similar proceedings held in chambers, which was a closure. 2019 ND 206, ¶ 17. In *People v. Harris*, the appellate court concluded the trial court closed the defendant's trial by holding the peremptory challenge portion of jury selection in chambers. 10 Cal. App. 4th 672, 682-687, 12 Cal. Rptr. 2d 758 (1992). The court stated that the

4

proceedings were not "public" for purposes of the public trial right because a record of the proceedings was later made available to the public. *Id*. at 684. In contrast, the court in *People v. Williams* distinguished *Harris* and concluded no closure had occurred because the parties first made preemptory challenges in public view at sidebar and then announced them to the open court. 31 Cal. Rptr. 2d 769, 772-73 (Cal. App. Dep't Super. Ct. 1994) (citing *Harris*, generally).

[¶12] Massachusetts appellate courts have concluded similarly regarding a defendant's public trial right under the Sixth Amendment of the United States Constitution. *Com. v. Grant*, 940 N.E.2d 448, 454 (Mass. App. Ct. 2010). In *Grant*, the court initially conducted jury selection in an open courtroom and asked the venire members if any of them had any bias towards or knew the parties to the case and whether serving on the jury would pose a hardship. *Id*. at 450. Some potential jurors answered affirmatively, and the court conducted individual questioning in chambers. *Id*. at 451. These proceedings were transcribed, and only the judge, prosecutor, and defense counsel were present. *Id*. at 451, 454. The court concluded that "[c]onducting the individual questioning in the judge's chambers constituted a full closure in the constitutional sense." *Id*. at 454-55. *See also Com. v. Jaynes*, 55 Mass. App. Ct. 301, 311-13, 770 N.E.2d 483 (2002) (concluding courtroom closure for individual questioning was supported by sufficient findings on the required factors).

[¶13] Here, the district court initially conducted jury selection on the record and in open court. During questioning of the panel, the parties and court agreed to visit with three prospective jurors in private after each indicated a desire to answer certain questions in private or indicated prior knowledge of the case which prompted an objection to further public questioning. The State argues that no closure occurred because the court conducted the individual questioning "outside the hearing of the rest of the jury pool so as to not prejudice the remaining venire" and because no member of the jury pool was asked to exit the courtroom. The transcript shows individual questioning occurred in a separate room, rather than simply outside the hearing of the panel. At the beginning of jury selection, the court told the panel that if any of them had sensitive information that they did not want to share "in front of the

whole group," then they had the option of going into "another courtroom just across the hall there" where they could share their information "in private." After general questioning of the panel in the courtroom, the court explained that it was going to conduct individual questioning "with some of the prospective jurors in private. We'll go to the room across the way…. But we should be back in no more than about 10 or 15 minutes."

[¶14] Although it is possible the district court could have conducted individual questioning in a different public courtroom, the court's repeated characterization of those proceedings as "private" is sufficient on appeal to establish that they were what the court said they were: private as opposed to public. These statements would reasonably communicate to anyone present that they were not welcome to follow to the other courtroom in order to continue observing the proceedings. By referring to the brief proceedings in the other room as "in private," the court committed essentially the same error we identified in *Martinez*, 2021 ND 42, ¶¶ 29-32, using the other courtroom as private chambers for jury selection. We conclude this record shows there was a closure because the court conducted individual jury selection in a different room announced to the public as "in private" and thus not open to the public. *Press-Enterprise Co.*, 464 U.S. at 512.

C

[¶15] Because the district court closed part of Coons' trial, we must consider whether the court sufficiently considered the *Waller* factors. *See Rogers*, 2018 ND 244, ¶ 14; *Davis-Heinze*, 2022 ND 201, ¶ 4. These factors are:

> (1) the claiming party must advance an overriding interest that is likely to be prejudiced, (2) the closure must be no broader than necessary to protect that interest, (3) the trial court must consider reasonable alternatives to closing the proceeding, and (4) it must make findings adequate to support the closure.

*Rogers,* at ¶ 15 (citing *Waller v. Georgia*, 467 U.S. 39, 48 (1984)). "Trial courts are strictly required to make findings before a trial closure, and failure to make each of the findings requires reversal." *Martinez*, 2021 ND 42, ¶ 22 (citing *Rogers,* at ¶ 19). Although we require findings sufficient to satisfy *Waller*, we

6

do not necessarily require that the court expressly references that or any other case so long as the findings themselves are sufficient. *See State v. Modtland*, 970 N.W.2d 711, 721-723 (Minn. Ct. App. 2022). Here, the court did not refer to *Waller* or generally to the threshold requirements before closing a trial proceeding but did make some findings that we now consider under the *Waller* framework.

1

[¶16] To satisfy the first *Waller* factor, the district court must find "an overriding interest that [would likely have been] prejudiced" without the closure. *Waller*, 467 U.S. at 48. "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co.*, 464 U.S. at 510. A defendant's right to a fair trial is such an overriding interest. *Morales*, 2019 ND 206, ¶ 21 (citing *Rogers*, 2018 ND 244, ¶ 14); *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 393 (1979); *Waller*, at 45 (dicta). "To preserve fairness and at the same time protect legitimate privacy, a trial judge should inform the prospective jurors, once the general nature of sensitive questions is made known to them, that those individuals believing public questioning will prove damaging because of embarrassment, may properly request an opportunity to present the problem to the judge *in camera* but with counsel present and on the record." *Press-Enterprise Co.*, 464 U.S. at 502. A prospective juror has an interest in avoiding disclosure of deeply personal and legitimately private matters. *Cable News Network, Inc. v. United States*, 824 F.2d 1046, 1048 (D.C. Cir. 1987). This interest is distinct from the defendant's right to a fair trial, which would be implicated by a juror's reluctance to disclose personal knowledge about the defendant that may influence the other jurors if answered in their presence.

[¶17] Here, the district court articulated its reasoning that Coons' fair trial right was an overriding interest and was likely to be prejudiced without a closure of the proceedings. The district court informed the potential jurors that they had the option to answer questions in a different room if they didn't want to share certain information in front of the whole jury panel. The court conducted individual jury selection of potential juror numbers 11, 15, and 18.

[¶18] In open court, Juror 15 requested to talk in private and stated that she had previously heard information about the case. Defense counsel objected to further questioning to prevent juror taint, and the court sustained. In open court, Juror 18 stated that he had previously read about the case. The State inquired whether he had any preconceived notions about the case when defense counsel objected to prevent juror taint, and the court deferred further questioning on the topic until it could be addressed in private. Finally, Juror 11 stated that he also had read about the case, and the State, the defense counsel, and the court agreed to visit with Juror 11 in private for the same reason as with Jurors 15 and 18.

[¶19] The record shows the district court closed the proceedings to protect Coons' fair trial right, and the fact that defense counsel objected to further questioning while in front of the other jurors and thus avoiding tainting the entire pool supports the fact that Coons' fair trial right was the interest asserted in support of closing part of the proceedings. The district court articulated sufficient reasoning to support an overriding interest under *Waller* factor one.

2

[¶20] Second, "the closure must be no broader than necessary to protect that interest." *Waller*, 467 U.S. at 48. Whenever a trial court requires a "prospective juror to make an affirmative request [to speak in private], the trial judge can ensure that there is in fact a valid basis for [an overriding interest that is likely to be prejudiced]. This process will minimize the risk of unnecessary closure." *Press-Enterprise Co.*, 464 U.S. at 512. To analyze whether a closure is no broader than necessary to protect the asserted overriding interest, the court must evaluate the breadth of closure against the overriding interest it identified in step one. Whether individual questioning is requested to avoid potential embarrassment to a juror or instead to avoid tainting the entire pool may justify a different scope of closure.

[¶21] Before beginning voir dire, the district court made this statement to the entire panel:

The lawyers get to ask you some questions about further qualifications. These are not meant to be embarrassing or intrusive. They're meant to be informative. If a lawyer asks you a question that you don't want to share in front of the whole group, we can go—there's another courtroom just across the hall there. We can go over there, and we can talk to you in private, so please keep that in mind. And as I say, they're meant to be informative, not intrusive.

[¶22] This context shows the district court's statement to jurors that they could talk with the court and counsel in private was to avoid their being asked embarrassing or intrusive questions in a public setting. That offer of privacy was very different from the objection leading to the separate interviews of three jurors—that the defense did not want to contaminate the entire jury pool. The record quoted above clearly supports this conclusion for Jurors 11 and 18 because they were interviewed separately only after responding to a question about their knowledge of facts, and only after an objection from the defense.

[¶23] Initially, the record is less clear regarding Juror 15. But after review, it too is clear the entire separate discussion with Juror 15 related to her knowledge of potentially criminal conduct committed by Coons. To start with, the defense objected to Juror 15 openly responding to a question about what she might have heard about the case. The following dialog occurred:

MR. BOUGHEY: Your Honor, at this time, I think we should delay any further inquiry. We were already planning on visiting with this person outside the presence of the panel. I think she's treading on dangerous waters and could really goof things up if we continue on this line of questioning.

THE COURT: I believe that's a[n] objection that's well taken. We'll visit with Juror 15 in private. She's already asked that we do that.

The early record does not explicitly state why Juror 15 was already being questioned outside the presence of the panel before the defense objection. The purpose and subject matter of Juror 15's request is made clear by what followed during questioning while in the second courtroom:

9

MR. BOUGHEY: Well, I'll just cut [to] the chase. You had mentioned you had concerns, and you wanted to visit outside the presence of the panel, which is what we're doing now. What were those concerns?

PROSPECTIVE JUROR NO. 15: I didn't want to say it in front of everybody because I didn't want to—

MR. BOUGHEY: Of course.

PROSPECTIVE JUROR NO. 15: —sway anybody's opinion, but I do believe she forged my friend's notary stamp, so.

[¶24] Taken in context, and when accounting for the details of the objections, only one reason existed for the separate questioning. The three jurors were interviewed in a separate courtroom to avoid contaminating the remaining jury pool. The separate interviews were for protection of the jury pool, and not to avoid embarrassing individual jurors by disclosure of deeply personal or embarrassing information. The district court may protect an overriding interest in avoiding contamination of the entire pool without closing the proceedings to the public, but only the other potential jurors needed to be excluded from the individual questioning.

[¶25] Here, the district court conducted private individual questioning of three potential jurors whose testimony in open court indicated that their answers to a question risked tainting the jury pool. The court treated the situation as if it were to avoid embarrassing or intrusive questions, as suggested by its general instructions, rather than to avoid tainting the pool, as the juror's initial responses indicated. The district court failed to satisfy *Waller*'s requirement that any closure be no broader than necessary because the record shows the court conducted this questioning "in private" outside the presence of the public and the rest of the jury pool, when only the rest of the jury pool needed to be excluded to protect the interest in a fair trial.

3

[¶26] Trial courts are obligated to consider reasonable alternatives to closing a proceeding and "take every reasonable measure to accommodate public

10

attendance at criminal trials." *Presley*, 558 U.S. at 214-15. Here, the district court initially informed the potential jurors that the court could conduct private jury selection in a courtroom across the hall if any of them had information that they did not want to share in open court. The record shows that the court conducted much of jury selection in open court. It ceased to do so only when a potential juror requested to speak in private or indicated prior knowledge of the case. The court announced that it would visit "in private" with three prospective jurors for "no more than about 10 or 15 minutes." It is the court's obligation to consider alternatives to closure even when the parties do not suggest any. *Presley*, 558 U.S. at 214; *Minot Daily News v. Holum*, 380 N.W.2d 347, 350 (N.D. 1986). Here, the district court narrowed the closure to include only a brief portion of jury selection using a procedure approved by the United States Supreme Court to protect against juror embarrassment. *Press-Enterprise*, 464 U.S. at 511-13. But the court erred by failing to consider alternatives to closure in the context of an overriding interest in avoiding contamination of the jury pool rather than an interest in avoiding juror embarrassment. Here, the jurors indicated they had information that should not be shared in front of the rest of the prospective jurors because it was about the defendant or the case and not because it was personal or embarrassing.

4

[¶27] We conclude that the district court's findings were sufficient to show an overriding interest but that the court's limited consideration of the scope of closure and failure to consider alternatives to closure were erroneous. Although the court identified one interest that may support closure, it did not narrowly tailor to that interest. We conclude this error is obvious error.

IV

[¶28] Although the public trial error we identified in the previous section is sufficient to reverse the conviction, we address Coons' claim of bias, because if meritorious, it may require assignment of a different judge on retrial. *See State v. Craig*, 2019 ND 123, ¶¶ 8-10, 927 N.W.2d 99. Coons argues that during her trial the district court made a prejudicial and biased statement that the jury could have used as evidence to convict her. She did not raise the issue of judicial

11

bias at trial. "'The failure to raise the issue of judicial bias in the trial court precludes our review on appeal.'" *Wisnewski v. Wisnewski*, 2020 ND 148, ¶ 65, 945 N.W.2d 331 (quoting *Wenzel v. Wenzel*, 469 N.W.2d 156, 158 (N.D. 1991)). The court may, however, review an unpreserved claim of judicial bias for obvious error. *State v. Majetic*, 2017 ND 205, ¶¶ 13-15, 901 N.W.2d 356 (citing *State v. Tresenriter*, 2012 ND 240, ¶ 12, 823 N.W.2d 774). "'[W]e exercise the power to notice obvious error cautiously and only in exceptional circumstances where the defendant has suffered serious injustice.'" *Majetic*, at ¶ 14 (quoting *Tresenriter*, at ¶ 12). Error is obvious when the appellant demonstrates (1) an error, (2) that was plain, and which (3) affected his substantial rights. *Id.* at ¶ 15 (citation omitted).

[¶29] Coons argues that the district court prejudiced her trial by making a prejudiced and biased statement against her. At the trial, defense counsel asked a witness about a civil proceeding that Coons was a party to, and the trial court sustained a relevance objection. Immediately thereafter, defense counsel again inquired about the civil case, and the court interjected: "Let me stop this. That probate file, that is over. It's done. Your client lost in the probate proceeding, and she did not appeal it. It is a final judgment." Coons now argues that this statement is evidence of bias or prejudice. We disagree. We conclude the trial court was ensuring that the trial would proceed efficiently and not deviate into irrelevant or collateral matters.

[¶30] A trial court has great discretion over how to conduct a trial and to keep "questioning within bounds" "where counsel for the defendant [goes] into collateral and immaterial matters." *State v. Bilbrey*, 349 N.W.2d 1, 4 (N.D. 1984) (citing *Haugen v. Mid-State Aviation, Inc.*, 144 N.W.2d 692, 696 (N.D. 1966)). A trial court may remind counsel to refrain from further incursions into collateral and immaterial matters. *Majetic*, 2017 ND 205, ¶ 25 (quoting *State v. Foard*, 355 N.W.2d 822, 823-24 (N.D. 1984)). *See also* N.D.R.Ev. 403 (a trial court has discretion to exclude relevant but confusing, time-wasting, or cumulative evidence).

[¶31] Here, the district court was explaining its basis for halting further questioning into the civil proceeding and keeping the trial in bounds. Before trial, the court sent a letter to the parties announcing that it was uncertain

about how much they should discuss the civil or probate code in Coons' criminal trial. On the first day of trial, outside the jury's presence, the court explained that it wanted to avoid introducing discussion of civil law in a criminal trial to prevent juror confusion.

[¶32] After the district court made the statement, which Coons argues was biased or prejudiced, the court stated, "We've had these discussions outside the presence of the jury and I'll say it now. I don't know how far we can get into these civil matters, and I don't want this to become a trial within the trial of the civil proceeding." Here, the trial court's comments were not biased or prejudiced against Coons, but the court was keeping the witness interrogation "within bounds." *Bilbrey*, 349 N.W.2d at 4; N.D.R.Ev. 403. We conclude these statements do not establish bias and thus there was no error, obvious or otherwise.

V

[¶33] Coons also argues the trial judge violated Rule 605, N.D.R.Ev., by acting as a witness at the trial. Because we reverse on the basis of the public trial violation, we need not reach this argument.

[¶34] We reverse the judgment.

[¶35]  Jon J. Jensen, C.J.
  Jerod E. Tufte
  Douglas A. Bahr


**Crothers, Justice, dissenting.**

[¶36] I respectfully dissent from the majority's holding Coons has shown she was denied her right to a public trial. I do not join the majority's decision the district court did not make prejudicial or biased statements in front of the jury because that portion of the decision is not likely to reoccur on remand and therefore is dicta.

[¶37] The resolution of this case turns on the judge's meaning of the word "private," and whether his use of that word as a matter of law commands a conclusion that limited voir dire of three potential jurors was not open to the public. On this record, I do not agree with the majority's conclusion it does. *See* majority opinion, ¶ 14 ("Although it is possible the district court could have conducted individual questioning in a different public courtroom, the court's repeated characterization of those proceedings as 'private' is sufficient on appeal to establish that they were what the court said they were: private as opposed to public.").

[¶38] The appellant bears the burden of establishing her rights were violated. In the context of a public trial claim, this Court held:

> We now clarify that an appellant bears the burden of proving this error. *See State v. Rademacher*, 2023 ND 9, ¶ 8, 984 N.W.2d 660 (quoting *L.C. v. R.P.*, 1997 ND 96, ¶ 18, 563 N.W.2d 799) ("On appeal, the appellant bears the burden of showing error."); *see also Commonwealth v. Williams*, 401 N.E.2d 376, 378 (Mass. 1980) ("The burden is clearly on the defendant to demonstrate that the public was excluded from his trial[.]"); *Cameron v. State*, 490 S.W.3d 57, 69 (Tex. Crim. App. 2014), on reh'g (Mar. 2, 2016) (noting "the burden to show that a trial is closed to the public is on the defendant"). In the instance of an alleged public trial violation, this means the appellant must demonstrate the public was excluded from a proceeding and the proceeding was of a nature that the public had a right to be present.

*State v. Frederick*, 2023 ND 77, ¶ 7, 989 N.W.2d 504.

[¶39] Here, Coons failed to establish that the public was excluded from the limited separate voir dire of three potential jury members. Rather, she assumes, and the majority agrees it is possible, that is what happened. *See* majority opinion, ¶ 14. However, Coon's duty on appeal is to do more than assume—she "must demonstrate the public was excluded from a proceeding" before she can obtain appellate review of the claimed constitutional error. *Frederick*, 2023 ND 77, ¶ 7.

14

[¶40] The jury selection transcript confirms the district court offered to discuss any "embarrassing or intrusive" matters "in private." The transcript also confirms the separate voir dire of three potential jurors actually was conducted to avoid contaminating the larger jury pool, rather than to discuss a juror's intimate or embarrassing matters.

[¶41] Voir dire of the three prospective jurors was held in a separate courtroom "across the hall" from where the remaining jury pool was assembled. The district court moved to the other courtroom to separately voir dire three jurors regarding what they knew about the case. Notwithstanding the actual and known reason for the separate voir dire, much is made of the district court's use of the phrase "in private," seemingly to suggest the "private" discussions support a conclusion the district court improperly excluded the public from the second courtroom. *See* majority opinion, ¶¶ 2, 8, 13, 14, 25 and 26.

[¶42] Because the separate interviews were for protection of the jury pool, and not to avoid embarrassing individual jurors by disclosure of intimate or salacious information, I do not believe it is reasonable to infer the district court conducted "private jury selection" from which the public was excluded. *See* majority opinion, ¶ 26. Rather, absent a clearer record establishing exclusion of the public, we should infer no more than that the separate questioning was moved to a different courtroom than the one containing the rest of the jury pool.

[¶43] I also do not agree the record otherwise supports concluding the second courtroom was closed to the public. The transcript shows the district court never said the public was included or excluded from voir dire of the entire panel in the main courtroom. The majority concludes that proceeding was public. *See, e.g.,* majority opinion, ¶ 13 ("Here, the district court initially conducted jury selection on the record and in open court."); *id.* at ¶ 19 ("In open court, Juror 15 requested to talk in private with the district court and parties and stated that she had previously heard information about the case."). Yet in the face of a similar record for the voir dire in the second courtroom, the majority reaches the opposite conclusion—that the courtroom across the hall was closed to the public.

15

[¶44] When the limited voir dire of the three potential jurors was moved to the adjacent courtroom, the transcript contains no indication that the public was included or excluded. In the absence of a clearer record, and with only the judge's use of the word "private" to describe voir dire outside of the presence of the whole panel, I would not presume the public was excluded from the proceedings in the second courtroom.

[¶45] Finally, I note limited voir dire of the three jurors was not merely conducted "in a separate room," or in "a different room," as the majority writes. Majority opinion, ¶¶ 7 and 14. It was conducted in a courtroom, and not in the judge's chambers, or in the jury assembly room, or in another controlled access or limited capacity room in the courthouse. Courtrooms ordinarily are public spaces, and absent a record to the contrary, conducting the voir dire in a courtroom strongly suggests to me that the location was open to the public. Therefore, under the mandate of our *Frederick* decision, I would hold Coons to her burden of establishing as a threshold matter that the proceeding actually excluded the public. If Coons cannot meet her burden on direct appeal, she has the opportunity to do so through post-conviction relief proceedings. *See* N.D.C.C. ch. 29-32-1.

[¶46] In this case, Coons has failed to meet her burden. I therefore would reject her claim that the district court violated her Sixth Amendment right to a public trial, and I would not engage in the further analysis entertained by the majority.

[¶47] Daniel J. Crothers
Lisa Fair McEvers